ELIZABETH JOHNSON, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

1.  Dying declarations are limited to criminal prosecutions when the subject matter of the investigation is the declarant's death; and where in a melee two persons are shot—one killed and the other mortally wounded—the dying declaration of the latter are not admissible in evidence against the party charged with killing the former.

2.  Dying declarations made by a party who is shot and mortally wounded in a melee, made four or five hours after the shooting, and after the party had seen and spoken to several persons, cannot be. said to be the spontaneous utterances of thoughts created by or springing out of the transaction, and therefore cannot be considered as a part of the *res gestae*.

Writ of Error to the Circuit Court for Calhoun County.

The facts in the case are stated in the opinion of the court.

*Lewis & Buford* and *J. W. Kehoe*, for Plaintiff in Error;

*Park Trammell*, Attorney General, and *C. O. Andrews*, for the State.

HOCKER, J.—Elizabeth Johnson, alias Sis Johnson, and Monroe Bess were jointly indicted in Calhoun Coun-

ty for the murder of one James Whittington on the 23rd, of December 1910, in that county. Elizabeth Johnson was tried alone (Monroe Bess having broken jail) in October, 1911, and found guilty of murder in the first degree with a recommendation to mercy. She was sentenced to the State Prison for life, and brings the judgment here for review by writ of error.

The principle question presented by the assignments of error is whether the dying declaration of one John Whittington, the son of James Whittington, who was shot and mortally wounded in the same melee, (but not by the defendant) in which James Whittington was shot and killed, was properly admitted in evidence. The main facts are that on the afternoon of December 23rd, 1910, Elizabeth Johnson, accompanied by Monroe Bess, her son-in-law, Mary Bess, her daughter, Zeke (Cephas) Johnson, and Willie (Buddie) Johnson, her sons, went to the home of James Whittington, and there found in one room of the small house in which he lived James Whittington, his son John Whittington, and his granddaughter, Townie Bray. Immediately on the arrival of Elizabeth Johnson at James Whittington's house a melee occured and three or four gun shots were fired in rapid succession. Nothing seems to have been said by either of the parties, and the exact cause of the row we are unable to determine. James Whittington an old man about seventy years old, and Zeke Johnson were killed on the spot. John Whittington was mortally wounded, and died some five or more hours after he was shot. It does not clearly appear that Elizabeth Johnson and her party went to Whittington's for the purpose of engaging in a fight. Townie Bray testified positively that Elizabeth Johnson shot and killed James Whittington, and

2—Vol. 63

that John Whittington was shot and mortally wounded by another of the Johnson party. John Whittington's dying declaration made several hours after he was wounded, was allowed to be introduced in evidence by the State, over the objections of the defendant, and in that declaration John Whittington stated that Elizabeth Johnson shot his father James Whittington. Several assignments in various forms question this ruling.

This is the first time this question has been before this court, though we find on an examination of the authorities, that it is by no means a new one. We think that reason and the overwhelming weight of authority are against the ruling of the trial court. "Dying declarations constitute one of the exceptions to the rule which rejects hearsay evidence, and the ground for their admission is generally placed upon necessity, in order to prevent the escape of the slayer from justice; and it is founded upon the theory that when an individual is in constant expectation of death all temptation to falsehood, either of hope, interest or fear will be removed and the awful nature of the situation will be presumed to impress him as strongly with the necessity of a strict adherence to truth as the most solemn obligation of an oath administered in a court of justice. This necessity is a public one of which civilized society feels the pressure for the protection of human life by the punishment of manslayers. Wharton on Homicide (3rd ed.) pp. 973-975. See Gardner v. State, 55 Fla. 25, 45 South. Rep. 1028, and the numerous decisions by this and other courts therein cited. By the great weight of authority such dying declarations are limited to criminal prosecutions when the subject-matter of the investigation is the declarant's death. 2 Wigmore on Evidence, pp. 1801 and

1802; Wharton on Homicide, (3rd. ed.) 972. In many States it is held that "although two persons killed were shot in the same fight, the dying declarations of the one are not, as such, admissible in evidence on the trial of the slayer for the murder of the other." 4 Elliott on Evidence, Sec. 3032; Underhill on Crim. Ev. (2nd. ed.) Sec. 106.

In the case of State v. Bohan, 15 Webb. (Kan.) 407, the facts were these: A little before 4 o'clock A. M. on the 3rd of November, 1874, the appellant shot Thomas Anderson and William N. Anderson. The shots, four in number, were fired in rapid succession, but a brief time intervening between the first and last shots. Of the wounds then inflicted Thomas Anderson died almost instantly without uttering a word. William N. Anderson lived about seventeen hours, and sometime about noon made the statement admitted as a dying declaration. The appellant was tried on an information for the murder of Thomas Anderson only. On these facts the question arises, can the dying declaration of one person be received as proof of guilt against a party charged with murdering some other person? The court then examines the question and concludes that the evidence of the dying declaration was improperly admitted. In the opinion the cases on 12 Rich. (S. C.) 321, and 23 La. Ann. 558, which are cited in the brief of the Attorney General, in the case at bar, are referred to us against the weight of authority and not supported by reason, though these cases involve the killing of more than one person by the same act. See also the English Nisi Prius case of Rex v. Baker, 2 Moodly & Robinson, 53; and in support of the general rule see Hudson v. State, 43 Tenn. 355; State v. Fitzhugh, 2 Oregon, 227; State v. Medlicott,

9 Webb. (Kan.) 257; Mora v. People, 19 Col. 255; Brown v. Commonwealth, 73 Pa. St. 321. Also see the important note to the case of State v. Meyer, in 86 Am. St. Rep. pp. 665, 666. In this note, page 666, the case of State v. Terrell, 12 Rich. (S. C.) 321, and State v. Wilson, 23 La. Ann. 558 are referred to as having been criticised in other jurisdictions, and as against the weight of authority. See also Mitchell v. Commonwealth, 12 Ky. Law 458, 14 S. W. Rep. 489, and 4 Ency. Ev. p. 944.

The contention is also made by the State that if the dying declaration of John Whittington can not be admitted in evidence as such a declaration, yet it was proper as a part of the *res gestae*. We are unable to agree with this view. This declaration was made several hours, perhaps four or five, after the shooting. John Whittington had seen and spoken to one or more parties between the time he was shot and the time the declaration was made. It does not appear that he was in the possession of his faculties, and there had been ample time for him to think over the whole transaction. This declaration can not therefore be said to have been made under such circumstances as will raise a reasonable presumption that they were the spontaneous utterance of thoughts created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they were the result of premeditation or design. Lambright v. State 34 Fla. 564, 16 South. Rep. 582; Vickery v. State, 50 Fla. 144, 38 South. Rep. 907. Leave out of the case the dying declaration of John Whittington and the evidence bearing on the guilt of the defendant is conflicting. No one can tell what the verdict would have been if it had not been received.

There is another assignment based upon a remark

of the court made when the dying declaration was admitted in evidence. As it is not probable that this question will arise on another trial, it is unnecessary to discuss it in this opinion.

The judgment below is reversed.

WHITFIELD, C. J., AND TAYLOR, SHACKLEFORD AND COCKRELL, J. J., concur.