R. L. STINSON, *Plaintiff in Error,* v. THE STATE OF FLOR-
IDA, *Defendant in Error.*

Opinion Filed November 8, 1918.

Petition for Rehearing Denied December 20, 1918.

1.  An affidavit in support of a motion for continuance upon
    the ground of absent witnesses which shows that an ef-
    fort was made to secure the presence of the witness at the
    trial by obtaining a subpoena for him to appear at the
    trial and testify, that it was served upon him in ample
    time to enable him to appear, and that he lived in a neigh-
    boring town in the same State, precludes any inference of
    lack of diligence on defendant's part in securing the pres-
    ence of the absent witness.

2.  An affidavit for continuance upon the ground of an absent
    witness, which contains a statement of facts to which it is
    affirmed the witness will testify and which appear to be
    material, should also set forth when and how the informa-
    tion was obtained by the affiant that the absent witness
    would testify as recited in the affidavit.

3.  The denial of a motion for continuance made by the de-
    fendant in a criminal prosecution upon an indictment charg-
    ing murder in the first degree, which motion is based upon
    the ground of the absence of a witness and is supported
    by a sufficient affidavit showing that the absent witness
    will testify to a state of facts tending to show the absence
    of premeditation, will be considered harmless error in view
    of a verdict of guilty of murder in the second degree which
    does not contain the element of premeditation.

4.  The denial of a motion for a continuance made by the de-
    fendant in a criminal case, which motion is based upon
    the ground of the absence of a witness and is supported
    by a sufficient affidavit showing the facts to which it is
    alleged the absent witness will testify will be considered

harmless error' if upon consideration of all the evidence adduced at the trial it appears that the defense in support of which the testimony of the absent witness was desired was not under the law available to the defendant.

5. A person who has been appointed by the Sheriff to be a Deputy under Section 1675b, Florida Compiled Laws 1914, and who has taken and subscribed to the oath prescribed by Statute and executed a bond with sureties and filed the same with the Board of County Commissioners, has no authority and under the law, is not allowed to perform any service as Deputy Sheriff until the bond is approved by the County Commissioners.

6. In a criminal prosecution the defendant cannot avail himself of the defense of self-defense when it appears that the defendant himself brought on the situation under the compulsion of which he strikes the blow or fired the shot which he claims was justified.

7. One who believing himsel to be a Deputy Sheriff, but whose bond as such has not been approved by the County Commissioners as the law requires cannot avail himself of the defense of self-defense when in attempting to arrest another without a warrant the latter resists and a situation results unedr the compulsion of which the defendant claims to act. The defendant is in the situation of one who has provoked a difficulty.

8. In the trial of a cause the matter of permitting leading questions is within the discretion of the Trial Court and is not reviewable on writ of error.

9. A question propounded to a witness the answer to which may tend to incriminate the witness, may be excluded upon objection by counsel for that reason although the witness himself does not personally voice the objection.

10. A question propounded during cross-examination of a witness which is not in cross of any matter connected with

the material facts brought out in the direct examination and does not tend to elicit any fact showing motive, interest or *animus* of the witness, is properly excluded.

11. The burden is upon the plaintiff in error to make the alleged error to appear because the presumption obtains that the judgment was right.

12. It is not allowable upon cross-examination to impeach a witness upon an immaterial matter.

13. It is not reversible error for the Trial Court upon motion of the State to strike testimony that is in effect a selfserving declaration of the defendant, not part of the *res gestae*, and harmful to the defendant in one aspect.

14. A statement by the defendant at the time of the difficulty cannot be said to be part of the *res gestae* unless it is so closely connected with the difficulty as to appear to grow out of the transaction and exclude the idea that it was a mere recital of some feature of the difficulty, or an opinion or comment upon it, the result of thought or design.

15. Where there is no doubt that the defendant unlawfully began a difficulty under the compulsion of which he acted and killed the deceased a threat by the deceased against the defendant made sometime recently before the homicide, is not admissible in behalf of the defendant.

16. Where the Court overrules an objection to an improper question, such ruling will not be considered reversible error if the answer produces no injurious result to the defendant's defense.

17. A defendant to whom the defense of self-defense is not available may not show the mental attitude of his antagonist towards him even though that attitude was hostile to the defendant.

18. Instructions to the Jury requested by the defendant to be given which are inapplicable to the evidence are properly refused.

19. Section 3732, General Statutes 1906, denounces as an offense the act of any one who having been appointed to any office assumes to perform any of the duties thereof before he has qualified according to law.

Writ of Error to Circuit Court for Columbia County; M. F. Howe, Judge.

Judgment affirmed.

*J. B. Hodges* and *R. T. Boozer*, for Plaintiff in Error;

*Van C. Swearingen*, Attorney General, and *C. O. Andrews*, Assistant, for the State.

ELLIS, J.—The plaintiff in error, Stinson, hereinafter referred to as the defendant, was convicted in the Circuit Court for Columbia County of the crime of murder in the second degree upon an indictment charging him with the murder of James Prevatt on May 19, 1917. The indictment was filed on April 23, 1918, the defendant pleaded not guilty three days later and the trial was begun on the first day of May following.

The defendant by his counsel moved for a continuance upon the ground that a material witness named Harry Green was then absent without the consent of the defendant. The motion was supported by the affidavit of the defendant, the certificate of Dr. Dyess that Green on April 30th, was under treatment and not able to attend court, the affidavit of Mr. Gillen that Dr. Dyess was a reputable physician, and the affidavit of Mr. Albritton confirmatory of Dr. Dyess' certificate.

In support of the motion there was also attached the subpoena for Green and the Sheriff's return thereon showing that it was served one or two days before the trial began. The affidavit of the defendant states that the Sheriff's return upon the subpoena issued for the witness showed that the witness could not be found. The subpoena was directed to seven persons, Harry Green among them. The Sheriff's return states that the writ was "executed 4/29-30/18, by delivering a true copy to' within witness." Whether the subpoena was served upon Green or not, it sufficiently appears that his residence was known to be in a neighboring town, a subpoena was issued for him within ample time to secure his presence at the trial, but he was unable to attend on account of sickness. The defendant could not be charged with lack of diligence under these circumstances, and his affidavit complies with the rule as to absence of connivance on defendant's part at the witness' absence and as to averments that the witness' testimony would be material, that the facts cannot be proved by any other witness known to the defendant and that the application was not made for delay only, and that he could not safely go to trial without the testimony of the witness whose testimony he expected to procure at the next term. This motion for continuance was denied, and the ruling is made the basis for the first assignment of error.

The affidavit filed in support of the motion for continuance states that the absent witness would testify that he "was running an engine and stopped at the place where the killing occurred a short time before it occurred, got off his engine to go to get orders, when he saw a crowd of men on another track, one of them was Jim Prevatt, heard talking, saw Prevatt being searched, saw his hands held up and saw a pistol in his hand at

the time, and he heard shots fired just as Prevatt lowered his hand with the pistol in it; this was the shooting that killed Prevatt."

According to the defendant, the circumtsances of the killing were as follows: The defendant was an employee of the East Coast Lumber Co., as night watchman; he had been appointed a deputy sheriff; had taken the oath and filed his bond with the County Commissioners as the law directs, although the bond had not been approved. The deceased, Jim Prevatt, had a pistol and was carrying it concealed. This fact the defendant knew early in the day, but made no effort to arrest Prevatt then. The defendant said that he "did not want to pull Jim at all until he forced me to do it." At about 9 o'clock at night of the same day, the defendant met Prevatt on the railroad track and told him that he would have to arrest him. Prevatt said all right and "took his gun up in his right hand." The defendant then ordered one of severay bystanders to "search" Prevatt. The defendant told the bystander that the pistol was in Prevatt's hand and to take it. The bystander stepped aside without getting the pistol and the defendant undertook to get it. In doing so he brushed Prevatt's sleeve, who said, "Keep your damn hands off me," and "came down with it (the pistol) at" the defendant. Then the defendant shot Prevatt three times, according to some of the witnesses, and going away for a short while returned and expressed a desire according to some of them to shoot Prevatt again if he was not dead. According to defendant, however, he merely expressed an opinion as to his duty to shoot again if the men standing near permitted Prevatt to "get up with that gun in his hand." As to Prevatt having any pistol at all at the time the defendant attempted to arrest him, there was conflict of evidence between the de-

fendant and the eye-witnesses to the shooting. The latter said that a little while after Prevatt fell they saw a pistol lying on the ground near his hand. One of the defendant's witnesses said he heard the shots, went up the track, saw a man lying between the rails and "a few minutes after" he got there he saw "a gun lying on the ground."

. In behalf of the deenfdant there was evidence that the deceased always carried at least one pistol and that upon this occasion he went to the lumber Co.'s yard armed and with the intention to kill the defendant on account of some fancied insult. There was evidence of threats made by the deceased against the defendant's life.

If the facts set out in the affidavit for continuance had been admitted to be true, that is to say, if it were admitted that the deceased had a pistol in his hand when the defendant attempted to arrest him and during the search or immediately afterward lowered his arm and pointed the pistol at defendant with the warning that the latter must not touch him, would the verdict that was rendered be justified? That is the question which must be answered in order to determine whether there was error in denying the motion for continuance. The deefndant as we said could not be charged with negligence in failing to procure the attendance of the witness or his testimony, and the facts to which it was claimed the absent witness would testify were not sworn to by any other witness save the defendant, and upon a charge of murder in the first degree were material to show the absence of premeditation. It is true that the affidavit does not set forth where and how the information was obtained that the witness Green would testify as recited, and was, therefore, defective. See Moore v. State, 59

Fla. 23, 52 South. Rep. 971. The reason for the rule is apparent. The trial court is required to examine motions for continuance in criminal cases very closely because of the temptation in such cases to delay the proceedings, particularly if the case against the defendant is a strong one. An application for continuance, therefore, should set forth where and how information was obtained that the absent witness would testify to the facts so material to the defense in order that the court might know that the application is not based upon mere supposition, conjecture, surmise or hearsay. This case affords a very fair illustration of the reason of the rule. The shooting occurred at night. It was quite dark. None of the bystanders, who according to the defendant crowded around the deceased, saw the pistol in his hand, yet the defendant states in his affidavit that Harry Green, who was some distance away, who came upon the scene by accident as it were, saw the pistol in the hand of Prevatt. It would have been of much aid to the court to have been advised that the absent witness himself had told the affiant that he would so testify and not leave the supposition open that the information came second or even third hand to the affiant.

But aside from this point, which we think was fatal to the motion, the proposed evidence being admitted as true, the verdict would have been justified, because under the circumstances the proposed evidence was not admissible to justify the taking of Prevatt's life by the defendant, but only to show lack of premeditation. The jury acquitted the defendant of murder in the first degree in which the element of premeditation must exist. The proposed evidence was not admissible upon the ground of self-defense because the defendant not having any authority under the law to make an arrest, his attempt to de-

prive the deceased of his liberty was unlawful. Even if the deceased had a pistol in his possession, the defendant, whose bond as deputy sheriff not having been approved, had no authority under our statute to make the arrest for the misdemeanor of carrying concealed weapons. See Chapter 6478, Acts of 1913, Secs. 1675-6, Florida Compiled Laws, 1914.

The office of Sheriff is a very important one; he is invested by law with duties, powers and responsibilities which no private citizen may assume or exercise; he is clothed with authority of law to execute its decrees; in him is represented the majesty of the law, for what he does he must do only at the law's command; his act must be the act of the law, and as such the people honor and respect it.

The person who undertakes to perform the duties of deputy sheriff must have proper authority to so act. A deputy duly appointed and authorized under the statute has the same power as the Sheriff appointing him. The statute provides that his bond shall be approved by the County Commissioners before he shall have authority, or as the statute is worded, "shall be allowed to perform any service as such deputy." He who assumes therefore to perform any service as a deputy sheriff should know that he is duly qualified under the law. It does not appear that the deceased made any assault upon the defendant, nor that he was guilty of any disturbance upon the premises, which the defendant had in charge, nor that, if being a trespasser upon the premises, he was requested to leave. As watchman the defendant had the right in the name of his employer to protect the premises from trespassers and use such force as was necessary to evict them, but he had no authority to arrest one and detain him or deprive him of liberty upon the ground

that he was suspected of carrying a weapon concealed upon or about his person. The defendant, therefore, became the aggressor when he undertook to arrest the deceased. He placed himself in a position which he could not possibly justify. He said he thought he was duly qualified as deputy sheriff. One must know that at his peril when he undertakes to interfere with the liberty and freedom of a citizen. Here then was a difficulty brought on by the defendant's unlawful act. The defendant's fault brought on the situation under the compulsion of which, according to his defense, he fired the fatal shot. In such case self-defense was not available. See Lovett v. State, 30 Fla. 142, 11 South. Rep. 550; Sylvester v. State, 46 Fla. 166, 35 South. Rep. 142; King v. State, 54 Fla. 47, 44 South. Rep. 941; Mercer v. State, 41 Fla. 279, 26 South. Rep. 317; Kennard v. State, 42 Fla. 581, 28 South. Rep. 858; Bassett v. State, 44 Fla. 12, 33 South. Rep. 262. The jury evidently gave the defendant the full benefit of the defendant's statement that the deceased had a pistol in his hand, the same fact the absent witness would have sworn to according to the affidavit. And while that fact may have shown lack of premeditation to kill, it was not sufficient under the circumstances to justify the fatal shot, nor to eliminate from the act that quality which evinced a depraved mind regardless of human life. Considering the evidence, we think that even if the proposed testimony of the absent witness be admitted as true, the verdict of the jury would be justified. Hicks v. State, 25 Fla. 536, 6 South. Rep. 441. The first assignment of error therefore cannot be sustained.

The second and third assignments of error are based upon the court's ruling in the matter of a question propounded by the State Attorney to a State's witness. The

witness had said that after the defendant shot Prevatt,
he, the witness, and defendant walked off. The State At-
torney asked the following question: "Q.  Why did you
ask him that (to come away) ; to get him out of the way
to avoid further trouble?" "A.  Yes, to avoid further
trouble." The defendant's counsel moved to strike the
question and answer because the question was leading.

Permitting leading questions is a matter, this court
has said, within the trial court's discretion, and is not
reviewable on writ of error. See Coker v. Hayes, 16 Fla.
368; Wood v. State, 31 Fla. 221, 12 South. Rep. 539;
Myers v. State, 43 Fla. 500, 31 South. Rep. 275; Reyes v.
State, 49 Fla. 17, 38 South. Rep. 257; Falk v. Kimmerle,
57 Fla. 70, 49 South. Rep. 504. The answer, however,
was not prejudicial, as there was no intimation as to the
person or persons from whom the witness anticipated
further trouble, and whether or not he feared more
trouble was immaterial.

A witness for the State was asked on cross-examina-
tion if he had a pistol there that day, referring to the day
Prevatt was killed.  The question was objected to by the
State, and the objection was sustained.  This ruling is
made the basis of the fifth assignment of error.  There
was no error in that ruling. The purpose of the question
and its relevancy to the issue is not apparent.  Counsel
state in their brief that the defendant had the right to
show that certain State witnesses were armed, but out of
what transaction or situation the right grew is not clear-
ly pointed out. It is said the defendant was a stranger
at the place of the homicide, that some of the witnesses
had not been there for a long time before, that they had
gathered there, knowing that the deceased would be ar-
rested, but what all that argues is not shown.  This court
cannot, nor could the trial court assume that the State

witnesses were a gang of bad men, assembled there for the purpose of aiding the deceased, one of their gang, in a murderous assault upon the defendant. There is nothing in the record to justify such a suspicion. The conduct of the men when the homicide occurred was remarkably quiet and orderly so far as the testimony shows. One of them walked away with the defendant after the shooting, and another asked him not to shoot the fallen man again when the defendant returned and asked if Prevatt was dead. The question was excluded upon the ground that the answer might incriminate the witness. The witness himself did not claim the privilege, but it was claimed for him by the State and the witness accepted the service. The question was properly excluded upon the ground stated in the record and for other reasons.

A state witness was asked upon cross-examination if he went to see Walker (a foreman of the Lumber Co.) to ascertain whether the defendant had the right to arrest Prevatt. The State Attorney interposed an objection to the question, and the objection was sustained. The ruling is made the basis of the sixth assignment of error. Walker was not shown to have the power to authorize the defendant to make arrests of people for misdemeanors without warrant. As has been shown, it was not a question of what the defendant thought his powers were as deputy sheriff, but what they actually were under the law. The question was not in cross of any matter connected with the material facts brought out in the direct examination, nor did it tend to elicit any fact showing motive, interest or animus of the witness. So we think this assignment cannot be sustained.

The eighth assignment of error rests upon a ruling sustaining the State Attorney's objection to a question asked by the defendant's counsel of a State witness to

ascertain if the clerk at a meat market, which was near the scene of the homicide, had paid the witness for beef which he had sold to the market. We have discovered no error in this ruling. It is argued that as the State Attorney gave no ground for his objection the court should not have sustained it, and in doing so committed reversible error. But it does not follow that no valid ground existed for the objection because none was given, nor that the defendant was injured because the witness was not permitted to answer the question. Error must be made to appear if it exists, this court has repeatedly said, and if it does not appear the presumption that the judgment was right obtains. See Petty v. Mays, 19 Fla. 652; McConnell v. Sullivan, 37 Fla. 576, 20 South. Rep. 762; Vinson v. Palmer, 45 Fla. 630, 34 South. Rep. 276; Lewis v. State, 55 Fla. 54, 45 South. Rep. 998; Putnal v. State, 56 Fla. 86, 47 South. Rep. 864; Colson v. State, 51 Fla. 19, 40 South. Rep. 183.

Assignments of error numbered from nine to fourteen inclusive are discussed together. The assignments rest upon rulings excluding questions propounded to State witnesses upon cross-examination. The purpose of the questions seemed to be to elicit information tending to show that the State witnesses had assembled at the scene of the homicide in anticipation of a difficulty between the deceased and the defendant. The argument made in the brief is that the questions propounded were in cross-examination and tended to elicit information connected with the material facts brought out in the direct examination. Whatever may have been the purpose of the questions, the record does not disclose that the information sought bore the slightest relevancy to the issue. Some of the questions were not even in cross of any matter developed in the direct examination. If there had been

28—Vol. 76.

any evidence that the difficulty was begun by the deceased and that a conspiracy existed between him and the witnesses or some of them to commit some attack upon the defendant or depredation upon the property he was guarding, the questions may have been proper to elicit full information of the conspiracy; but there existed no act so far as the record discloses, showing the slightest evidence of an unlawful agreement between the parties to commit any breach of the peace. If the men merely assembled there to witness a fight which they may have anticipated would occur from a knowledge of the parties principally involved and their threats against each other, they were doubtless amenable to criticism for not interfering and preventing the tragedy, but what benefit the defendant could claim from that it is difficult to perceive. Motive to lie is not shown because a man hangs around to see a fight. It may show bad judgment and some lack of refinement, but not a tendency to mendacity.

A witness named Dowling was called by the State, who testified that the defendant, on the morning of the day on which the homicide was committed, requested the witness to tell Prevatt that if he went beyond the water pump into the negro quarters of the Lumber Company's camp that defendant would "have to arrest him, kill or be killed." On cross-examination the witness said he did not deliver the message to Prevatt. He was then asked if he had not testified at the preliminary trial that he told the deceased that the defendant "asked him not to go down in the .quarters beyond the tank." The question was objected to by the State upon the ground that it sought to lay a "predicate for an impeachment of matters brought out for the first time on cross-examination." The objection was sustained, and the ruling is made the basis of the fifteenth assignment of error. There is no

reversible error in this ruling. While in the question asked the witness there was not embodied an accurate quotation of the message defendant sent to the deceased, it was definite enough to call the witness' attention to it and to obtain the information as to whether it had been delivered.

It is admissible on cross-examination to show that a witness has made contradictory statements about a material matter which was made the subject of the examination in chief. But that reversible error was committed in this ruling, we cannot agree with counsel for the defendant. The message only showed the defendant's state of mind toward the deceased. Other witnesses testified to substantially the same thing concerning the defendant's intention to arrest the deceased or kill him. Whether the message was delivered or not was immaterial, because as we have shown, the defendant is precluded from the defense of self-defense because it appears that he was the aggressor; that his unlawful act brought about the difficulty—therefore if the message did anger the deceased and provide a motive for assault, it was of no significance because no assault was shown to have been committed by him that justified the defendant in killing him. It thus appears that the defendant's counsel sought to impeach the witness on cross-examination upon an immaterial matter which is not allowable. See Adams v. State, 54 Fla. 1, 45 South. Rep. 494; Myers v. State, 43 Fla. 500, 31 South. Rep. 275; Stewart v. State, 42 Fla. 591, 28 South. Rep. 815.

The sixteenth assignment of error is based upon a ruling sustaining the State's motion to strike a witness' affirmative answer to the following question: "Q. Did you hear Mr. Stinson say right after the shooting that if they had all done as he said this thing would not have

happened?" The words constituted a self-serving declaration if they served any purpose at all in the defendant's behalf. The statement was very like an admission by him that he killed the deceased because certain bystanders had failed to do some act which he had requested them to do. In this light it was very harmful to the defendant and he was not injured by its exclusion. On the other hand, if by that testimony it was sought to show that there was no premeditation in the defendant's act the exclusion of the testimony was not harmful because the jury by their verdict rejected the idea of premeditation. The statement was not part of the *res gestae*, because it could not be said to have been a part of the difficulty so intimately connected with and growing out of the transaction as to exclude the thought that it was a mere recital of some feature of the difficulty or opinion or comment upon it, the result of thought or design. See Lambright v. State, 34 Fla. 564, 16 South. Rep. 582; Vickery v. State, 50 Fla. 144, 38 South. Rep. 907; Johnson v. State, 63 Fla. 16, 58 South. Rep. 540.

The defendant, testifying in his own behalf, was asked by his counsel if he had a conversation with the deceased that day, to which he answered, yes. He was then asked: "What was that conversation?" To this question the State objected, and the objection was sustained. This ruling constitutes the basis of the seventeenth assignment of error. What the conversation was, to what it related, and what bearing it could have had upon the issues in this case, is left for surmise. The record does not disclose. But if it be assumed that it would have disclosed a feeling of hostility on the part of the deceased toward the defendant, it would not have been admissible in aid of the defense of self-defense for the reasons already given.

The eighteenth assignment of error, which rests upon the exclusion by the court of the following question propounded to the defendant while testifying in his own behalf, *viz*: "Q. You say you heard those threats that he had made?" must fail not only because a threat against the defendant under the circumstances of this case would not avail him in aid of a plea of self-defense, but because the defendant had already testified what the threat was, and that he had heard it.

The defendant was asked by the State Attorney on cross-examination the following question: "Q. Did you know whether or not you had a right to kill a man for a misdemeanor in trying to arrest him, a legal right?" "A. I did not." The question was objected to by defendant's counsel, and the objection overruled. They bring the point here as the nineteenth assignment of error. The question was a benefit to the defendant in that it gave him the opportunity of refuting any thought of his shooting merely to enforce or accomplish an arrest, and he promptly availed himself of the opportunity by disclaiming any such knowledge that might have led to such a thought. The question produced no injurious result from the defendant's standpoint, and so the assignment should not be sustained even .if the question was improper.

M. A. Gordon, a witness for the defendant, was asked if he had been "warning Mr. Stinson about Prevatt." The question was objected to, and the objection sustained. The defendant's counsel contend that such ruling constituted the twetieth error. Whatever may have been Prevatt's mental attitude toward the defendant, the latter was precluded by his own act from using evidence of it in aid of a plea of self-defense. The defendant began the difficulty. His unlawful act· brought about a situation which to him doubtless seemed fraught with considerable

danger to himself. In such circumstances as we have said the defense of self-defense was not available, so this assignment fails.

The twenty-first, twenty-second, twenty-third and twenty-fourth assignments of error involve the same question as to the defendant's right to avail himself under the circumstances of the plea of self-defense. Whether Prevatt had a pistol and whether his brother afterward identified the one in the Sheriff's possession as the property of the deceased, are matters involved in the above mentioned assignments of error. There is no merit in them, and they are not sustained.

The defendant's counsel moved to strike the testimony of the witness, J. F. Hunt, who was called by the State The motion was overruled and the action of the court is assigned as the twenty-fifth error. The ground of the motion was that the testimony was "irrelevant and immaterial and too remote as to the transaction between Prevatt and this defendant." This witness testified that Prevatt on Monday before he was killed borrowed some moeny from the witness and left his pistol as security, and that he had not redeemed it when he was killed by the defendant. There was evidence that Prevatt owned only one pistol. The purpose of the testimony of the witness, Hunt, was very clear, highly relevant and might have been regarded by the jury as sufficient to prove that the pistol which was found that night near Prevatt after he had fallen had not been dropped there by him. The motion was properly denied.

The twenty-seventh assignment of error involves the question of whether it was material to show that the defendant had been advised that his bond as deputy sheriff had been approved. The twenty-eighth, twenty-ninth and thirtieth assignments of error involve the same question.

As we have said, it was not a question of what the defendant thought concerning his powers and duties as a deputy sheriff, it was his duty to know that he was duly qualified as such. The defendant as a witness in his own behalf, however, was permitted to answer the question as to his belief about his bond being approved, which he did by saying that he thought it had been. Upon motion of the State Attorney this testimony was stricken, and an objection sustained to a question which sought to elicit the fact that the defendant thought he was a deputy sheriff. After the testimony was closed the State Attorney withdrew his objections to this testimony and announced his willingness to agree to the defendant taking the stand and testifying to his belief that he was a duly commissioned and authorized deputy sheriff. The defendant's counsel, however, objected to this proceeding. In the first place there was no error in excluding from the jury the defendant's testimony as to his belief concerning his authority and powers. The statute referred to, Section 1675b, Florida Compiled Laws, 1914, prohibits any deputy sheriff from performing any service as such deputy until the bond has been approved. But it is argued that the defendant was *de facto* a deputy sheriff. There was evidence before the jury of his appointment, his testimony that he was trying as deputy sheriff to make an arrest was allowed to go in without objection and whether he was a *de facto* officer in nowise depended upon his belief upon the subject, so his defense that he was *de facto* a deputy sheriff and undertaking at the time to make an arrest was considered by the jury. We think that it was not a valid defense, but it seems nevertheless to have been made. The withdrawal by the State Attorney of his objection to the testimony conferred no legal right upon the defendant who was not in a position to request

the withdrawal of such ojection, nor an instruction from the court to consider the objectionable evidence along with the other evidence in the case. These assignments, we think, are not well taken.

The thirty-first assignment of error rests upon the order overruling the motion for a new trial. There are seventeen grounds in the motion of which the third, eighth, ninth, tenth, eleventh, thirteenth and fifteenth are discussed. The third ground involves the question of whether the verdict was contrary to the evidence. The remaining grounds question the correctness of certain instructions to the jury and others which were requested, but refused.

We will dispose of the third ground of the motion first, because the view which we have of the case as disclosed by the evidence will determine what disposition should be made of the remaining grounds of the motion involving the correctness of charges given and refused. We think the evidence amply supported the verdict. The defendant employed as a night watchman by private citizens had also been appointed by the Sheriff of the county as a deputy. A bond had been executed and the oath taken and the papers filed with the County Commissioners, but the bond had not been approved. Therefore under the statute the defendant was not allowed to perform any service as such deputy. The defendant, therefore, was clothed with no official power, had no official character. He was empowered by virtue of his employment to eject trespassers from the company's premises and to use such force as was reasonably necessary to do so. But the defendant did not seek to eject the deceased as a trespasser, nor does it appear that any question of trespassing by the deceased was involved. If he was on the company's ground when he was shot, it appears that

he was there under a kind of license which others seemed to enjoy without question. The defendant undertook to arrest the deceased upon the charge of carrying concealed weapons, a charge which seems to have been made by the defendant, but which had found no expression save in his own mind, and for which no warrant had been issued. In this attempt the defendant was at fault. He had no authority, no power, no warrant of law for such an attempt. The attempt amounted to an assault and even battery upon the deceased. In such case the defendant could not invoke the law of self-defense in justification of his act in taking the life of the deceased, until he had abandoned the difficulty, shown unmistakably his good faith in retiring from it and that he fired the shot only when under the circumstances a reasonably prudent and cautious man would have done so in the belief that it was necessary to save his own life or himself from great bodily harm. The evidence does not disclose any fact upon which it could be asserted that the defendant came within such rule. The evidence justifies the conclusion that the defendant, who was armed, approached the deceased, drew a pistol on him, told him he would have to arrest him, ordered some one to search him, which was done, himself attempted to remove a pistol from the deceased's hand, so the defendant says, and fired three shots at the deceased as soon as the latter said, "Do not put your hands on me," and lowered his arm, which had been raised during the search. Under these circumstances the jury were justified in concluding that the act of the defendant exhibited a depraved mind regardless of human life, even if it did not show a premeditated design to kill the deceased, within the meaning of the statute defining murder in the second degree. See Sec. 3205, General Statutes of 1906, Florida Compiled Laws,

1914. Under this state of case evidence of threats by the deceased, his habit in carrying a pistol, and his reputation for inebriety and general badness was inadmissible, as all charges given or requested upon the law of self-defense were inapplicable.

Charges given and those requested and refused which are made the bases of the eighth, ninth, tenth and eleventh grounds of the motion for a new trial were upon the law of self-defense and were inapplicable. As to those which were given by the court, however, and many such were given covering the subject fully, the defendant cannot complain, as they were all in his favor.

The thirteenth ground of the motion is based upon the following charge given by the court: "A person who attempts to make an unlawful arrest of another person thereby commits a trespass and is an aggressor towards such other person." By this language the court clearly meant that a person not an officer and having no authority to arrest one commits a wrong upon another if he attempts to arrest such other person, and is considered the aggressor if a difficulty follows such unlawful attempt. This charge correctly stated the law and was applicable to the facts.

·The fifteenth ground of the motion rests upon the following instruction: "It's a crime under the laws of Florida for any person appointed a deputy sheriff to assume to perform any of the duties of a deputy sheriff before qualification according to law." The court evidently had in mind Section 3507, General Statutes, 1906, Florida Compiled Laws, 1914, which forbids any one to falsely assume or pretend to be a deputy sheriff and take upon himself to act as such; or more likely Section 3732, General Statutes, Florida, Compiled Laws, which prescribes punishment for whoever being appointed to any office as-

sumes: to perform any of the duties thereof before qualification according to law. The charge was a correct statement of the law and applicable to the case.

We have found no error in the record, so the judgment is affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.