NOAH GREEN, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

## Division A.

Opinion Filed May 20, 1927.

1. Upon the trial of a person charged with murder in the first degree it is within the jury's discretion to recommend the defendant to mercy when the evidence is sufficient to support the charge.

2. Where the evidence in a criminal case, although conflicting as to the defendant's guilt, is such that reasonable men may differ as to its probative force or the conclusion to be drawn from it, the Appellate Court will not disturb the verdict where there is ample evidence to sustain it.

3. Where the evidence is sufficient to show that the accused had ample time to form a purpose to kill the deceased and for the mind of the killer to become fully conscious of its own design it will be deemed sufficient in point of time in which to enable the killer to form a premeditated design to kill.

4. If a person who was a party or a witness to a transaction makes at, or shortly after the incident, a statement in the

form of a narrative of a past event although relating to the transaction such statement is not considered a part of the *res gestae* and admissible as evidence.

5. The statement of a deceased person to be admissible in evidence as a dying declaration should be made in the presence of impending death with no hope of recovery on the part of the person speaking.

6. Evidence examined and found sufficient to support the verdict of murder in the first degree.

A Writ of Error to the Circuit Court for Broward County; C. E. Chillingworth, Judge.

Judgment affirmed.

*Farrington & Lockhart,* for Plaintiff in Error;

*J. B. Johnson,* Attorney General, and *Roy Campbell,* Assistant, for the State.

ELLIS, C. J.—Noah Green was convicted of the murder in the first degree of Asbury Goolsby. The jury recommended Green to the mercy of the court, so he was sentenced to life imprisonment. He seeks to reverse the judgment on writ of error.

The transcript of the record is made up under the new rules primarily intended for use in civil cases but which are permitted to be used in criminal cases. The record contained no copy of the indictment but upon motion of counsel for the plaintiff in error a copy of the indictment was certified to this Court.

All the assignments of error rest upon matters properly exhibited by the bill of exceptions. The points presented were embraced in a motion for a new trial which was overruled.

The bill of exceptions was presented and signed apparently upon the last day allowed by the Court for making up and settling of same.

The first error assigned and discussed is that the verdict was contrary to the evidence.

The evidence was amply sufficient to sustain the verdict. The circumstances of the transaction as shown by the bill of exceptions not only justified the conclusion reached by the jury but were of such nature that twelve men of reasonable intelligence acting as jurors could not very well have conscientiously arrived at any other conclusion than that the defendant was guilty of murder in the first degree. The recommendation to mercy was the jury's privilege. See McNish v. State, 47 Fla. 66, 36 South. Rep. 175; Logan v. State, 58 Fla. 72, 50 South. Rep. 536; Adams v. State, 56 Fla. 1, 48 South. Rep. 219; McDonald v. State, 56 Fla. 74, 47 South. Rep. 485; Williams v. State, 45 Fla. 128, 34 South. Rep. 279; Barker v. State, 74 Fla. 95, 76 South. Rep. 676.

It is contended that the evidence failed to establish a premeditated design on the part of the defendant to kill the deceased; that the transaction occurred upon a sudden encounter and in the heat of passion.

We do not agree with counsel. The evidence was ample to sustain the jury's conclusion that the act of the defendant proceeded from a premeditated design to take the life of the deceased without any reasonable ground to believe that he, the defendant, was in danger of bodily harm from the deceased.

A discussion of the evidence would serve no useful purpose but it may just as well be said here that aside from the testimony of the witnesses for the State the account of the transaction given by the defendant's witnesses is quite sufficient. The defendant's testimony tends to show that

he conceived his right to kill the deceased as established when someone, unknown to the defendant but whom he afterwards supposed to have been the nephew of the deceased, "fired a shot" from somewhere at something or somebody; or when the deceased, encumbered, impeded and burdened by the personal interference of Mrs. Burnsed, who clung to him and obstructed his movement, sought to "cut at" the defendant with a knife which the evidence tends to clearly establish never existed.

The deceased did not go to the house of Burnsed to visit Green, but the latter obtruded himself into the conversation between Burnsed and Goolsby, quickly took the opportunity for a quarrel, went then into the house, secured his pistol, returned, killed the deceased without any justification or even provocation except what a timorous person with a deadly weapon at hand might conceive to exist when in the presence of an unarmed man of whom he was afraid.

The testimony of the defendant himself and his kinspeople who testified in his behalf, one of whom found the knife three days after the homicide at the place where the deceased fell but which seems to have been the property of Robert Evans, who had loaned it to one of the children and had never been restored to the owner, all tends to establish the fact of premeditation. There was all the time necessary to form a purpose to kill and for the mind of the killer to become fully conscious of its own design. See Carter v. State, 22 Fla. 553; Keigans v. State, 52 Fla. 57, 41 South. Rep. 886; Barnhill v. State, 56 Fla. 16, 48 South. Rep. 251.

The first assignment of error is not supported. The second and third and fourth involve the same questions and need not be discussed; they are likewise not sustained.

The defendant offered to prove that the deceased some time after he was shot while lying on the ground and helpless told Robert Evans that: "We come here to get him

and he has got me, but I am not dead, though. Van he didn't stick to me like he said. He has got to do it over."

This witness was in the house when the killing occurred, probably saw a part of the transaction, but when the shooting had ceased and every one who could had gone away he heard Goolsby, who "was down out there on the ground on the kitchen side" call in about ten minutes; so Evans then went to him to bathe his face. It was then that the deceased began and finished the narrative not of that transaction but of some other which is probably ·supposed to have some kind of bearing upon the killing.

Upon objection the court excluded it and the ruling is assigned as the fifth error.

The testimony was not admissible as part of the *res gestae,* whatever may be meant by that term invented—so it has been said—because of its convenient ambiguity a sort of "catch all" in which to save a point when it may not be clearly brought under some better and more clearly defined head.

Whatever it is or is not there is at least one certainty in relation to it and that is if the supposed statement, exclamation or spontaneous utterance takes the form of a narrative of a past event it is very well established that it may not be considered as part of the transaction or *res gestae.* See Lambright v. State, 34 Fla. 564, 16 South. Rep. 582; Vickery v. State, 50 Fla. 144, 38 South. Rep. 907; Smith v. State, 48 Fla. 307, 37 South. Rep. 573; Johnson v. State, 63 Fla. 16, 58 South. Rep. 540; Stinson v. State, 76 Fla. 421, 80 South. Rep. 506.

Nor was the statement of the wounded man admissible as a dying declaration. The statement itself, if it bears the interpretation, which the defendant's counsel seem to place upon it, refutes the claim that it was made while the wit-

ness was in the presence of impending death and believing there was no hope of recovery.

No error having been made to appear by the record the judgment is affirmed.

STRUM AND BROWN, J. J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.