LEE RHODES, *Plaintiff in Error,* vs. STATE OF FLORIDA, *Defendant in Error.*

140 So. 309.

Division A.

Opinion filed March 22, 1932.

*E. F. Housholder* and *R. W. Ware,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

BUFORD, C.J.—In this case the plaintiff in error was con-

victed of the crime of murder in the first degree in the Circuit Court of Seminole County. There were three questions raised by the assignments of error which are necessary to be discussed. The first question presented is whether or not the evidence was sufficient to sustain the verdict. We think the evidence was entirely sufficient. The evidence shows that plaintiff in error and the deceased were at a Saturday night frolic; that a quarrel arose in which the deceased appears to have taken some part, as did also the plaintiff in error; deceased walked away from where the quarrel was in progress and the witnesses saw him pass around the automobile; the plaintiff in error passed around the automobile the other direction and, as some of the witnesses say, "headed off" the deceased as he reached a place about opposite the front door of the automobile and then witnesses saw the hand of the plaintiff in error go up and come down at and toward the deceased. The deceased fell and examination showed that he had then and there been cut in the neck with a sharp instrument, which wound very soon thereafter caused his death. Witnesses heard deceased say to plaintiff in error that the plaintiff in error had cut him without cause and that deceased was unarmed. Witnesses also saw defendant plaintiff in error kick or attempt to kick the deceased after he fell to the ground, curse him and say he would kill him. The plaintiff in error left the scene in an automobile in which was found a razor. The record shows that several of the witnesses present said to the plaintiff in error: "Lee, you ought not to done that", or words to that effect. That the deceased, in the presence of the accused and in the presence of others, said: "Why did you cut me? I have not got so much as a pen-knife." And that Ennis Jordan who was then present said to plaintiff in error, "Lee, God damn it, you done cut him;

don't kick him'' and Lee said: ''God damn son of a bitch, I'll kill him''.

If one person strikes another across the neck with a sharp knife or razor and thereby inflicts a mortal wound, the very act of striking such person with such weapon in such manner is sufficient to warrant a jury in finding that the person striking the blow intended the result which followed. There can be no doubt from the evidence in this case that the plaintiff in error struck the fatal blow.

If one unlawfully assaults another with a deadly weapon with the intent to kill such person so assaulted and does thereby kill such person so assaulted, such act constitutes murder in the first degree, if such unlawful assault was committed from and with a premeditated design to effect the death of the person so assaulted. It is not necessary, however, for the premeditation to have been conceived and to have existed any particular length of time. It is sufficient if it be shown that the accused had ample time to form the purpose to kill the deceased and for the mind of the killer to become fully conscious of its own design. Green vs. State, 93 Fla. 1076, 113 Sou. 121; Buchanan vs. State, 95 Fla. 301, 116 Sou. 275, and cases there cited.

The evidence in this case fully establishes all the assential elements of murder in the first degree.

We shall pass over for the present the question raised by the second assignment of error.

The third assignment of error is as follows:

''The Court erred in allowing the State of Florida over the objection of the defendant to propound the following question to the witness M. C. Bryan, and in allowing the said witness to answer the same, to-wit:

''Q. During the course of your conversation did you tell her that when Lee Rhodes killed Tom I helped him

out of it, and told him if he didn't quit drinking he would be in it again?

A. I told her that I told Lee when the court turned him loose from killing Tom Searcy for him never to drink any more liquor, if he drank liquor at some time he would get drunk and if he ever got in trouble again and him drinking it would be harder for him to get out than it was at that time."

We can see no legitimate purpose that could have been served by the evidence sought to be elicited and which was here objected to. It is contended that the evidence was sought for the purpose of showing the interest of the witness in the accused and to lay a predicate for impeachment by showing such interest, but the witness had not denied that he was interested or had been interested in the welfare of the accused and, therefore, there was no necessity for a predicate for impeachment. Aside from this, the question was prejudicial to the accused because it showed to the jury by inference at least that the accused had been at some time charged with the unlawful killing of some other person. The question was an improper one and the court should have stricken the question and instructed the jury to disregard the same and allow it to have no effect in connection with their consideration of the case. We think that this irregularity, however, was not sufficient to warrant a reversal, though it is of sufficient importance for this Court to take notice of it and to sound the warning that trial judges may guard against the evils which may come from such procedure.

We will now revert to the second assignment of error, which is as follows:

"The court erred in allowing the witness Della Lewis, over the objection of the defendant, to testify as follows: 'I want to tell you how come I to see it. How come I to see it, it was reported that Lee Rhodes, Ennis Jordan and Inez and Speedy were to come there to

beat up some boys in Woodbridge on that Saturday night.''

The record shows that Della Lewis was introduced as a witness for the State and after she had answered a few preliminary questions the following colloquy occurred:

''A. I want to tell you how come I to see it. How come I to see it, it was reported that Lee Rhodes, Ennis Jordan and Inez and Speedy were to come there to beat up some of the boys in Woodbridge on that Saturday night.'

And thereupon counsel for the defendant did object to the witness testifying as to what was reported, and moved the Court to strike the same upon the grounds that it was hearsay testimony and prejudicial to the defendant.

And the Court of his own motion did then ask the witness,

Q. Did you get information to that effect?

A. Yes, sir, I got information to that effect.

The Court overruled the objection. This class of testimony has been condemned by this Court in several cases. In the case of Kirby vs. State, 44 Fla. 81, 32 Sou. 836, this Court said:

''The third assignment of error is based upon the ruling of the court below in admitting the testimony of one Saussy, a witness for the State, to the effect that Miss Ives said to him that Kirby (defendant) had shot Ed. (the deceased) which led him to go to the scene of the shooting. This was objected to as being hearsay evidence. It was proper for the witness to say that he went to the scene of the shooting because of something said to him by Miss Ives, but not to repeat the assertions of fact made by her in said conversation, the defendant not being present.''

In the case of Jacksonville etc. Rwy. Co. vs. Peninsular Land Co., 27 Fla. 1, 9 Sou. 661, evidence of this character was held to have been properly excluded as hearsay testimony. To like effect is the holding of the Court of Appeals of Alabama in the case of Donaldson v. Roberson,

15 Ala. App. 354, 73 Sou. 223, and the Supreme Court of Alabama in the case of Shepard v. Austin, 159 Ala. 361, 48 Sou. 696.

In the case of Dickens vs. State, 50 Fla. 17, 38 Sou. 909, this Court said:

> "Where an answer to a question presents evidence which is illegal or objectionable on any known ground, the proper practice is a motion to strike it out and have the jury directed not to consider it, the movant specifying his objections to the evidence with like particularity as in objecting to questions."

We cannot say with confidence that this improper hearsay evidence did not in some degree influence the jury in the rendering of its verdict. We do not think this evidence could have had any result adverse to the defendant insofar as the determination of his guilt of murder in the first decree was concerned because without this there is sufficient evidence for the jury to have arrived at a verdict of guilty of murder in the first degree, but it is not at all beyond the range of possibility that it may have affected the jury in its determination as to whether or not it would recommend mercy. This testimony could have definitely created the thought in the minds of the jury that the accused went to the scene of the homicide intending when going there to engage in a personal difficulty and while it is possible, and probable, that the jury would have arrived at the same verdict which was returned without having this illegal evidence before it the defendant was entitled to have his case considered not including that evidence and for this reason the judgment must be reversed and the cause remanded for a new trial. It is so ordered.

Reversed and remanded.

WHITFIELD, ELLIS, BROWN AND DAVIS, J.J., concur.

DAVIS, J. (Concurring).—I think the third assignment presented reversible error. It is idle to say that an error

526

is harmless in admitting testimony upon which the State Attorney insists, notwithstanding objections by the defendant. No one knows better than the State's Attorney what evidence will help him get a conviction. Therefore, when he insists that certain evidence is legally proper, relevant and material to be admitted as a part of the State's case, and it is later found by the Supreme Court not to have been admissible, I think the State should be held bound by its vouchment for that testimony and that errors of this kind should not be excused as harmless. See Gunn vs. State, 78 Fla. 599, 83 Sou. Rep. 511.