474 So.2d 1170 (1985)
Wilton Amos ROSS, Appellant,
v.
STATE of Florida, Appellee.
No. 63767.
Supreme Court of Florida.
August 15, 1985.
*1171 Judith J. Dougherty, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Richard A. Patterson and Gregory G. Costas, Asst. Attys. Gen., Tallahassee, for appellee.
PER CURIAM.
Wilton Amos Ross appeals his conviction of first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we affirm the conviction of first-degree premeditated murder, but find the sentence should be reduced to life imprisonment without eligibility for parole for twenty-five years. We vacate the sentence of death.
The appellant was convicted of the first-degree murder of his wife, whose body was discovered on February 16, 1982, on the shore of Lake Talquin in Leon County. An autopsy revealed Gladys Ross had suffered multiple scalp injuries inflicted by a blunt instrument, one of which resulted in death by embolism. The victim's face was extensively bruised, scratched, and lacerated. According to medical testimony, the bruises occurred before death and were probably caused by a fist or foot. Injuries on the victim's hands and arms indicated she had fought her attacker. It was not possible to tell at what point during the attack the fatal injury occurred.
A witness who lived near the Rosses' houseboat testified that sometime between 11 p.m. and midnight on February 15, she heard the victim say: "Calm down. Get a hold of yourself. Straighten up." She then heard a noise which sounded like a bump or a slamming door, after which she heard no more voices.
Expert testimony indicated that blood of the same type as the appellant's was found underneath the victim's fingernails. A fingerprint identified as belonging to the appellant and made with human blood was found on the metal support post outside the Rosses' houseboat, which was docked at Williams Landing on Lake Talquin. A photograph taken of the appellant on February 17 showed some scratch marks on the side of his nose and underneath his ear. Testimony indicated his hand was cut and bruised.
Testifying in his own behalf, the appellant denied killing his wife. He stated that on the evening of February 15, his wife had dropped him at the river to fish and was to meet him at Coe's Landing between 9:00 and 10:00 p.m. When he arrived in his boat at the landing, his wife was not there. The *1172 appellant testified that, after a futile attempt to contact her, he bought a six-pack of beer, drank two beers, and waited until about 1:00 a.m. at a Coe's Landing trailer belonging to a friend. He then left in his boat for Williams Landing, which was approximately two miles away. On the way to the houseboat, he had motor problems and had to paddle part of the way home. He stated that when he arrived at about 3:00 a.m., his wife was not there. The owner of the trailer contradicted the appellant's testimony, stating that the appellant left Coe's Landing immediately after purchasing the beer.
The appellant also testified that he had cut his finger taping a broken window and that the fingerprint found on the support pole was probably his, that he had injured his hand in a boat-trailer accident, and that his face was probably scratched while setting out fish hooks.
The appellant's former cellmate, Dennis Harwood, testified that the appellant confessed to him that he had killed the victim. According to Harwood's testimony, the appellant told him that he had been drinking and, upon his arrival at the houseboat, had argued with his wife; that, in anger, the appellant hit the victim once with a hammer, believed she was dead, and then decided to make it look as though someone else had killed her; that he continued to hit her, had sexual intercourse with her so that it would appear she had been raped, and carried her in his boat to a river bank, where he left her.
The appellant objected to the state's introduction of the testimony of another former cellmate, Edward Thornton, whose name did not appear on the state's list of witnesses provided to the appellant during discovery. The court conducted a Richardson hearing, during which the prosecutor claimed the omission was inadvertent, that Thornton's name had been listed when the trial was formerly scheduled, and that Thornton had been mentioned in the depositions of Harwood and another of the appellant's former cellmates. The court continued the case to allow appellant's counsel to depose Thornton and then determined that the appellant was not prejudiced by the failure to list Thornton as a witness. The extent of Thornton's testimony was that he heard the appellant say to another inmate, "I'll kill you just like I did my wife," but noted that the statement may have been a joke.
The jury returned a verdict of guilty of first-degree murder. During the penalty phase, testimony elicited from the appellant's relatives indicated that the appellant is an alcoholic and becomes intoxicated easily. In accordance with the majority recommendation of the jury, the trial judge sentenced the appellant to death, finding one aggravating and no mitigating circumstances. In the sentencing order, the trial judge found the murder was heinous, atrocious, and cruel, but noted the evidence indicated the murder was not carried out in a cold and calculated manner.
Appellant raises seven issues in this appeal. These issues concern (1) the trial judge's refusal to dismiss for cause a prospective juror; (2) the admissibility of the unlisted witness's testimony; (3) the sufficiency of the evidence to support the verdict of guilt; (4) the sufficiency of the evidence to support the conviction of first-degree murder; (5) the trial judge's finding that the homicide was especially heinous, atrocious, and cruel; (6) the trial judge's refusal to instruct the jury on the mitigating circumstances of substantial impairment of appellant's capacity to appreciate the criminality of his conduct and the influence of extreme mental or emotional disturbance with respect to the appellant's alcoholism and intoxication at the time of the offense; and (7) the constitutionality of Florida's capital felony sentencing law.
With regard to the first issue, the appellant contends that the trial court committed reversible error by "refusing to dismiss for cause a juror who was a relative of the prosecutor." The record reflects that during the voir dire examination, in response to the trial judge's inquiry as to whether any of the prospective jurors knew the attorneys, a woman commented that *1173 she believed she had seen one of the prosecutors at a family reunion and stated, "I'm not sure, but he may be a distant relative of mine." After the trial judge denied appellant's counsel's motion to challenge the prospective juror for cause, counsel used a peremptory challenge to strike her. Appellant's peremptory challenges were subsequently exhausted, and the appellant contends that he was forced to accept a juror whom he believed to be unacceptable.
Section 913.03(9), Florida Statutes (1983), states that a juror may be challenged for cause on the ground that "[t]he juror is related by blood or marriage within the third degree to ... the attorneys of either party." Other than the juror's abstract statements that the prosecutor looked familiar and "might be a distant relative," appellant has offered no evidence and we can find nothing in the record to indicate that the juror was subject to dismissal for cause under section 913.03(9). The competency of a challenged juror is to be determined by the trial court in its discretion, and the court's decision will not be disturbed unless manifest error is shown. Christopher v. State, 407 So.2d 198 (Fla. 1981), cert. denied, 456 U.S. 910, 102 S.Ct. 1761, 72 L.Ed.2d 169 (1982); Singer v. State, 109 So.2d 7 (Fla. 1959). On this record, it is clear there was no manifest error committed by the trial judge in his refusal to dismiss the challenged juror for cause.
In his second point, appellant asserts that the trial judge erred in admitting the cellmate Thornton's testimony because his name had not been included in the witness list provided to the defense by the state in accordance with rule 3.220, Florida Rules of Criminal Procedure. A violation of a rule of criminal procedure by the state does not automatically entitle a defendant to reversal absent a showing that the non-compliance resulted in prejudice to the defendant. See, e.g., Cooper v. State, 377 So.2d 1153 (Fla. 1979); Lucas v. State, 376 So.2d 1149 (Fla. 1979); Richardson v. State, 246 So.2d 771 (Fla. 1971). Under the Richardson rule, we have required trial courts to hold a hearing to scrutinize both the events surrounding the failure to comply with the discovery rule and the impact on the aggrieved party. Kilpatrick v. State, 376 So.2d 386 (Fla. 1979). The record in this case reveals that the trial judge complied with Richardson, conducted a proper inquiry, and, after allowing a deposition of the witness, determined that appellant was not prejudiced. We find the trial judge did not abuse his discretion by allowing Thornton to testify.
The appellant, in his third issue, argues the evidence against him is entirely circumstantial and insufficient to prove that he killed the victim. We recognize that to prove a fact by circumstantial evidence, the circumstances must be inconsistent with any reasonable hypothesis of innocence. Hall v. State, 403 So.2d 1321 (Fla. 1981); McArthur v. State, 351 So.2d 972 (Fla. 1977); Davis v. State, 90 So.2d 629 (Fla. 1956). We find the record contains substantial, competent evidence from which the jury could reasonably conclude that the appellant committed the homicide of Gladys Ross. See Rose v. State, 425 So.2d 521 (Fla. 1982), cert. denied, 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983).
In the appellant's fourth point, he alleges that the evidence is clearly insufficient for the jury to find that the murder was premeditated. This Court has stated:
If the evidence shows that the accused had ample time to form a purpose to kill the deceased and for the mind of the killer to become fully conscious of his own design, it will be deemed sufficient in point of time in which to enable the killer to form a premeditated design to kill. Green v. State, 93 Fla. 1076, 113 So. 121, 122 (1927). Where a person strikes another with a deadly weapon and inflicts a mortal wound, the very act of striking such person with such weapon in such manner is sufficient to warrant a jury in finding that the person striking the blow intended the result which followed. See Rhodes v. State, 104 Fla. 520, 140 So. 309, 310 (1932).
*1174 Buford v. State, 403 So.2d 943, 949 (Fla. 1981), cert. denied, 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982). Premeditation, often being impossible to prove by direct testimony, may be inferred from the circumstances surrounding the homicide. Campbell v. State, 227 So.2d 873 (Fla. 1969), petition dismissed, 400 U.S. 801, 91 S.Ct. 7, 27 L.Ed.2d 33 (1970); Dawson v. State, 139 So.2d 408 (Fla. 1962). The evidence in the instant case reveals that the appellant was angry with the victim and that he brutally beat her about the face, head, torso, and extremities, with fist, feet, and an unknown blunt instrument while she attempted to defend herself. We find this record contains sufficient evidence from which the jury could rationally infer the existence of premeditation.
The appellant argues, in his fifth point, that the trial court erred in finding the homicide was especially heinous, atrocious, or cruel. In its sentencing order, the court stated:
The evidence confirms that Gladys Ross was the victim of a vicious, barbaric and savage murder by the [appellant]... . The nature and description of the wounds by the Medical Examiner support that the victim tried to defend herself for some period of time... . The documentation of diverse locations of blood pools and splatters around and about the grisly scene corroborate that the [appellant] did not effect instantaneous death of the victim and that she endured torturous knowledge of her impending death with excruciating pain.
The record amply supports this finding. See Heiney v. State, 447 So.2d 210 (Fla.), cert. denied, ___ U.S. ___, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984); Waterhouse v. State, 429 So.2d 301 (Fla. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 415, 78 L.Ed.2d 352 (1984).
The appellant further contends that the trial court erred in rejecting the mitigating circumstances of extreme mental or emotional distress or impaired mental capacity in view of the evidence that the appellant is an alcoholic and was intoxicated at the time of the homicide. The record reveals that, during the sentencing proceeding, appellant testified he was "cold sober" on the night of the murder. The trial judge found that this testimony "effectively negated possible mitigating considerations and denuded defense counsel of potentially efficacious argument in support thereof." It is apparent that the trial judge did not consider as mitigating factors the sentencing phase testimony of the appellant's family members relating to the appellant's drinking problems, the testimony of the state's key witness, Harwood, that the appellant confessed he had been drinking when he attacked the victim, or the evidence that the killing was the result of an angry domestic dispute in which the victim realized the appellant was having difficulty controlling his emotions. We find the trial court erred in not considering these circumstances collectively as a significant mitigating factor.
We also find significant the fact that appellant has no prior history of violence, cf. Harvard v. State, 375 So.2d 833 (Fla. 1977), cert. denied, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979), and the finding of the trial court that the "evidence presented by the prosecution supports the conclusion that the [appellant's] commission of the death act was probably upon reflection of not long duration."
Although the record contains sufficient evidence to sustain the jury's verdict of guilty of first-degree premeditated murder, we conclude the death penalty is not proportionately warranted under the circumstances of this case. See Blair v. State, 406 So.2d 1103 (Fla. 1981).
In view of our disposition of this cause, the seventh issue raised by the appellant is moot.
Accordingly, the conviction of first-degree murder is affirmed, the death sentence is vacated, and this case is remanded to the trial court for the imposition of a life sentence without eligibility for parole for twenty-five years.
It is so ordered.
*1175 BOYD, C.J., and OVERTON, ALDERMAN, McDONALD and SHAW, JJ., concur.
EHRLICH, J., concurs in result only.
ADKINS, J., concurs in result only in the conviction but dissents from the sentence.