328 So.2d 433 (1976)
Ernest John DOBBERT, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 45558.
Supreme Court of Florida.
January 14, 1976.
Rehearing Denied April 5, 1976.
*434 Louis O. Frost, Jr., Public Defender, James O. Brecher and Steven E. Rohan, Asst. Public Defenders, for appellant.
Robert L. Shevin, Atty. Gen., Harry L. Shorstein, Sp. Asst. Atty. Gen., and Carolyn M. Snurkowski, Asst. Atty. Gen., for appellee.
PER CURIAM.
Appellant was indicted on two counts of murder in the first degree and two counts of child torture in that he did commit various assaults upon Kelly Ann Dobbert including kicking, choking, and torturing her with his hands and feet and by use of other instruments and weapons and that from a premeditated design to effect death, he inflicted mortal injuries upon Kelly Ann which resulted in her death; in that he committed various assaults upon Ryder Scott Dobbert and from premeditated design to effect Ryder Scott's death, he inflicted mortal injuries resulting in Ryder Scott's death; in that he willfully tortured, mutilated, cruelly, wantonly and maliciously punished and tormented Honore Elizabeth Dobbert, a child, five years of age, and in committing battery upon her did intentionally and knowingly cause great bodily harm, permanent disability and permanent disfigurement to Honore; and in that he willfully tortured, mutilated, cruelly, wantonly, maliciously, and unlawfully punished and tormented Ernest John Dobbert, III, which caused serious bodily harm, permanent disability and permanent disfigurement to Ernest John, III, a child of eleven years of age. Appellant moved to dismiss the indictment which motion was denied as to counts one and two charging murder in the first degree but was granted as to counts three and four charging child torture. Subsequently, the Grand Jury returned an amended indictment charging two counts of murder in the first degree and two counts of child torture. A motion by appellant to sever counts one and two from the indictment was denied. Appellant filed a motion and affidavit for change of venue which alleged, inter alia, that defendant stands accused of acts inherently odious and subject to inflammatory exploitation by the press and that as a consequence of extensive publicity, the possibility of prejudice to him was great. The trial court, before ruling on a change of venue, entered an order which he stated was binding upon everyone occupying an official position having to do with this case including the State Attorney, and all of his assistants and employees, the Sheriff and all of his deputies and employees, the Clerk of the Circuit Court and all of his deputies and employees, the public defender and all of his assistants and employees, the defendant, all of the officers of this court, the witnesses for the State and the defense and anyone else connected with this case. Thereby, he ordered that none of the named persons will release any statement about this case to any news media at any time before or during this trial until it shall have been completed and disposed of. After hearing, he then took the motion for change of venue under advisement until after jury selection was attempted.
Pursuant to Rule 3.152(a)(2)(i), F.Cr. P.R., appellant moved to sever each of the four counts of the indictment, which motion was denied. The jury was selected, after which the judge denied the motion for change of venue. A lengthy trial was held, after which the jury returned verdicts of guilty of murder in the first degree of Kelly Ann Dobbert, guilty of murder in the second degree of Ryder Scott Dobbert, guilty of child torture of Ernest John Dobbert, III, and guilty of child abuse of Honore Elizabeth Dobbert. The jury returned an advisory sentence finding that sufficient aggravating circumstances did not exist to justify a sentence of death and that sufficient mitigating circumstances exist to warrant imposition of a *435 life sentence. Motion for new trial was denied and defendant was adjudicated guilty of each of the four counts of which he was found guilty.
The trial court imposed the maximum penalties for the crimes of murder in the second degree, child torture, and child abuse, which sentences are to run consecutively and total forty-six years;[1] and after closely examining and writing extensive findings as to each of the elements of aggravation and/or mitigation set out by law, the trial judge imposed the sentence of death for the first degree murder. He analyzed each individual mitigating and aggravating factor in detail and gave full explanation for his decision to impose the death penalty. Because of their importance to the decision of this cause, the findings enumerated by the trial judge must be set out herein. Relative to the mitigating circumstance of whether the defendant has no significant history of prior criminal activity, the trial court found as follows:
"FACT:
That on 9-20-65 the Police of St. Francis, Wisconsin, arrested the defendant for `Battery  Child', in that he `struck Ernest John Dobbert, III, age 5 years, several times causing a black eye, a large bruise on the upper forehand and red swollen cheeks and nose.'
"The Judge of that Court sent the defendant to a Hospital for mental observation and placed him on one year probation.
"FACT:
"That on 11-17-67 the Police of St. Francis, Wisconsin, arrested the defendant on the charge of `Assault', in that instance the report states that the defendant `disciplined his son, Ernest John Dobbert, III, for poor grades by burning his hands over an open flame on a gas range.'
"The defendant was found guilty and incomprehensibly the Judge of that Court only fined the defendant $50.00 and imposed no further punishment. This was only two years after he had been placed on probation for battery on Little John in 1965.
"FACT:
"The evidence and testimony of John III and neighbors at the trial and the defendant's own written statement was that he was constantly beating the children with fists, boards and other objects and was seen kicking, choking and beating Kelly Ann Dobbert, Ryder Scott Dobbert, Ernest John Dobbert, III and Honore Elizabeth Dobbert. The neighbors made their complaints to the Police and Social Welfare Agencies, but the defendant was able to avoid a thorough investigation of the charges by deceit, lies and by the murder of Kelly Ann and Ryder Scott Dobbert.
"CONCLUSION:
"There is no mitigating circumstance under this paragraph because there was a significant history of prior criminal activity *436 towards the children in both Wisconsin and Jacksonville, Florida."
Relative to the mitigating circumstance of whether the murder was committed while defendant was under the influence of extreme mental or emotional disturbance, the trial judge determined:
"FACT:
The defendant did not testify, however, his written statement did indicate that he thought he was under an emotional strain. However, that statement was more of a recitation of torture of the children than the establishment of any emotional strain.
"FACT:
The defendant was examined by two psychiatrists and a psychologist prior to trial and found to be sane and competent at the time of examination and at the time of the time of the crimes. The psychiatrists both stated that at the time of the crime he understood the nature, quality and wrongfulness of his acts, and knew right from wrong and was able to adhere to the right. Neither the psychiatrists or psychologist found or reported that he was under the influence of extreme mental or emotional disturbance at the time of the crimes."
and concluded that there is no mitigating circumstance under this paragraph. The trial judge determined that the mitigating factor of whether the victim was a participant in the defendant's conduct or consented to the act did not exist since "The defendant murdered his own nine year old daughter, Kelly Ann Dobbert by continuous beatings, kicking, hitting with fist and other objects, choking, sewing up her cuts with needle and thread and other torture and depriving her of medical care and finally murdered her, placed her body in a plastic garbage bag and buried her in an unknown and unmarked grave." As to the mitigating circumstance of whether the defendant was an accomplice in the murder committed by another person, the trial judge found:
"FACT:
"The evidence at the trial showed that defendant alone did the murder. It showed that his wife was in jail in Wisconsin and his Mother was also in Wisconsin and that he was the only adult living in the home. The facts also proved that defendant locked the children inside the home during his absence and confined them to the house when he was present with them and that he actively prevented outsiders, by lies, and subterfuge, from entering the home. The only evidence of torture, beatings and murder were those done by the defendant alone."
As to question of whether defendant acted under extreme duress or under the substantial domination of another, the trial court determined:
"FACT:
"No element of duress was ascertained by the psychiatrists as set forth in paragraph B. above. There is absolutely no testimony of duress in any degree which would justify the hideous crimes of which he was convicted. If, he suffered duress over the care and welfare of the children, there was help available but he turned away both Police and Family Services Workers before the murder of Kelly Ann and Ryder Scott Dobbert by lies and deception and by pretending all in the home were well and normal.
"FACT:
"There was no evidence that defendant was under substantial domination of another person. His wife was alternately in jail in Jacksonville, and Wisconsin for worthless checks and his mother was also in Wisconsin and he had no other relative in Jacksonville. While his wife was in the City Prison Farm in Jacksonville she caused the police to visit the Dobbert home to see to the welfare of *437 the children because on a visit the defendant told her of the injuries suffered by the children and his punishment of them. Her influence, if any, was for him to look after and protect the children.
"From a reading of the pre-sentence investigation report which is attached hereto as EXHIBIT # 1, it appears that his wife was under his domination to do criminal acts (cash worthless checks) for which she was later jailed."
After extensive written evaluation of the testimony of the psychiatrists, and as supported thereby, the trial judge concluded that defendant was mentally competent and able to understand the nature, quality and wrongfulness at the time of the crimes and had average intelligence. The trial court found no mitigating factor in defendant's age; he was a man of mature physical and mental years and of average intelligence. In general, the trial court concluded that there were no mitigating circumstances. The trial judge then proceeded to analyze each of the statutorily enumerated aggravating circumstances as they applied to this cause. In particular, as to the especially heinous, atrocious, and cruel nature of the murder of which defendant has been convicted, the trial court found, as follows:
"FACT:
"The defendant stands convicted of first degree murder of his 9 year old daughter, Kelly Ann Dobbert, second degree murder of his 7 year old son, Ryder Scott Dobbert, torture of his then 11 year old son, Ernest John Dobbert, III, and child abuse of his then 5 year old daughter, Honore Elizabeth Dobbert.
"FACT:
"The evidence and testimony showed premeditated and continuous torture, brutality, sadism and unspeakable horrors committed against all of the children over a period of time. The crimes were committed against the children constantly and it is difficult to separate the specific acts against the individual child. What was done to one  short of causing blindness and murder  was done to all. However, the Court has set forth below some of the cruel and brutal acts against Kelly Ann  in so far as trial notes and memory of testimony serve me correctly.
"Over the period of time of the latter portion of Kelly Ann's short, tortuous life the defendant did these things to her on one or many occasions:
1. Beat her in the head until it was swollen.
2. Burned her hands.
3. Poked his fingers in her eyes.
4. Beat her in the abodmen until `it was swollen like she was pregnant.'
5. Knocked her against a wall and `when she fell, kicked her in the lower part of the body.'
6. Held her under water in both the bath tub and toilet.
7. Kicked her against a table which cut her head  then defendant sewed up her wound with needle and thread.
8. Scarred her head and body by beating her with a belt and board  causing marks from her cheek, across the neck and down her back  which injuries worsened without treatment `until the body juices came out'.
9. On one occasion beat her continuously for 45 minutes.
10. On many occasions kicked her in the stomach with his shoes on, and on the night she died he kicked her a number of times.
11. Kept her out of school so that the many scars, cuts and bruises on her body would not be seen by others.
12. Defendant made no effort to get professional medical care and attention for the child and in fact actively *438 prevented any outsiders from discovering her condition.
13. Choked her on the night she died and when she stopped breathing he placed her body in a plastic garbage bag and buried her in an unmarked and unknown grave."
and found that the aggravating circumstances were sufficient and great to warrant the imposition of the death penalty.
Appellant initially claims reversible error in that the trial court denied his request that instructions on attempts be given pursuant to Rule 3.510, F.Cr.P.R. To this request, the trial judge responded:
"I will not give those. I don't consider there to be any attempt on a homicide. I am familiar with the rule. I don't really think that it says that you have to do that. I have read it over a number of times. On a homicide you either have a homicide or you don't have a homicide."
Rule 3.510, F.Cr.P.R., provides:
"Upon an indictment or information upon which the defendant is to be tried for any offense the jurors may convict the defendant of an attempt to commit such offense if such attempt is an offense, or may convict him of any offense which is necessarily included in the offense charged. The court shall charge the jury in this regard."
Relative to instructions as to attempts to commit charged offenses, this Court in Brown v. State, 206 So.2d 377 (Fla. 1968), explained:
"ATTEMPTS. Under § 919.16, a jury is empowered to convict a defendant of an attempt to commit the offense charged in the accusatory pleading, if such an attempt is itself an offense. Attempts generally are proscribed by § 776.04, supra. In limited situations attempts to commit described acts are defined as separate substantive offenses. For example, Fla. Stat. § 806.04, F.S.A. defines fourth degree arson in terms of an attempt to burn certain property.
"Section 919.16, simply requires that in every case, the trial judge must determine as a matter of law whether an attempt to commit the crime charged would itself constitute an offense under Florida law. If he determines that it does, either under § 776.04, or under a separate statute, then he must instruct the jury on the subject of such attempt, and the jury may find guilt accordingly. In this situation it is immaterial whether the accusatory pleading specifically charges an attempt. Further, the charge must be given, even though, in the opinion of the trial judge, the proofs establish guilt of the crime charged rather than a mere attempt to commit it."
Accord: State v. Washington, 268 So.2d 901 (Fla. 1972), and Rayner v. State, 273 So.2d 759 (Fla. 1973).
Appellee posits that the failure of the trial court to instruct on law of attempt, in the instant case, does not constitute reversible error. Citing this Court's decision in DeLaine v. State, 262 So.2d 655 (Fla. 1972), as authority for its position, appellee submits and we agree that the trial court's noncompliance with Brown, supra, and Rule 3.510, F.Cr.P.R., was error but was harmless error. In DeLaine, supra, the defendants had been charged, tried and convicted of rape. Therein, this Court found that the trial court erred in refusing to give the requested charge on assault and battery which under the language of Brown, supra, constitutes a necessarily included offense; however, this Court in DeLaine, supra, applied the harmless error statute, explicitly opining:
"It is apparent that we have not foreclosed, under appropriate circumstances, the invocation of Fla. Stat. § 924.33, F.S.A., which reads:
"`No judgment shall be reversed unless the appellate court is of the opinion, *439 after an examination of all the appeal papers, that error was committed that injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant.'
"In the case sub judice, the trial judge did instruct the jury on the lesser included crime of assault with intent to commit rape, and the jury had before it an opportunity to convict the petitioners thereunder. This the jury did not do, but chose to convict petitioners under the greater charge of rape, obviously because the jury had before it overwhelming evidence of force and repeated penetration with prosecutrix, together with evidence of her utmost resistance. The record and transcript of this trial demonstrates that great force was used upon the prosecutrix and that she was raped repeatedly against her will and that throughout she fought and resisted to the best of her ability.
"We hesitate to invoke the harmless error statute quoted above in a case of this magnitude, but we have determined that the petitioners received a fair trial and justice dictates an affirmance rather than a reversal. As a matter of common sense and logic, if the jury did not convict the petitioners of assault with intent to commit rape, the same jury would not convict them of assault and battery, which is two steps removed from the crime of which petitioners were convicted. Under the circumstances of this case, the failure to give the requested charge on assault and battery was harmless error."
Cf. North v. State, 65 So.2d 77 (Fla. 1963), application of harmless error to death cases.
The record, sub judice, shows that the jury was instructed on murder in the first degree, murder in the second degree, murder in the third degree, manslaughter, and justifiable and excusable homicide, and was further instructed:
"If you return a verdict of guilty, it should be for the highest offense which has been proved beyond a reasonable doubt."
We agree with Justice Drew's rationale in Spigner v. State, 304 So.2d 496 (Fla.App. 1, 1974), and find its application most appropriate to the instant cause. Therein, he held, in pertinent part, as follows:
"The record here shows that the trial judge charged the jury on: 1) murder in the second degree; 2) murder in the third degree; and 3) manslaughter, and defined these offenses to the jury with the admonition: `If you return a verdict of guilty, it should be for the highest offense which has been proven beyond a reasonable doubt.' The conviction of appellant by this jury of the offense of murder in the second degree brings the failure of the trial judge to charge on attempt squarely within the scope of the harmless error statute, and the holding of the Supreme Court in DeLaine v. State. This Court should not reverse a judgment of conviction unless the error committed `injuriously affected the substantial rights of the appellant'. The statute contemplates the commission of error by the trial judge, and we think it was error not to charge the jury as requested. The result reached by the jury, however, in finding the appellant guilty of murder in the second degree when it was empowered to find him guilty of two lesser offenses, presents the exact situation meant to be covered by the statute. The error clearly did not injuriously affect the substantial rights of appellant."
The trial judge did not commit reversible error in failing to instruct on attempt.
Relative to appellant's argument that the trial court erred in not allowing a change of venue, we find from the record *440 that the trial judge did everything possible to insure an impartial trial for the defendant. The jurors, carefully and extensively examined by defense counsel to determine that they could be fair and impartial, were sequestered and comprehensive gag order was placed on all participants of the trial. As further evidenced by the record, seventy-eight prospective jurors were interviewed; allowed thirty-two peremptory challenges, the defense only exercised twenty-seven. Upon the selection of twelve persons, the trial judge denied the motion for change of venue with the following analysis:
"Both the State and the defendant have challenges left. We have selected the jury.
"Most times the jurors have heard about the case in some fashion from the media. However, a number of them did not hear about it. Some of them that did not hear about it are on the jury. Some are not.
"As I said those that were selected, in the main, if I recall correctly, at least I was satisfied. I'm sure counsel for both sides have different ideas. I'm satisfied some of them had no opinions. If they had opinions they said that it would not affect their decisions. Some had impressions about the nature of the case. So I deny the motion for a change of venue."
Appellant has failed to show that he did not receive a fair and impartial trial, that the setting of his trial was inherently prejudicial. Cf. Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975) opinion filed June 16, 1975. The trial judge did not abuse his discretion in denying the motion for change of venue. Most recently in Murphy v. Florida, supra, the Supreme Court of the United States enunciated:
"The constitutional standard of fairness requires that a defendant have `a panel of impartial, "indifferent" jurors.' Irvin v. Dowd, supra, 366 U.S., at 722, 81 S.Ct. [1639], at 1642, 6 L.Ed.2d 751. Qualified jurors need not, however, be totally ignorant of the facts and issues involved.
"`To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.' Id., at 723, 81 S.Ct. [1639] at 1642.
"At the same time, the juror's assurances that he is equal to this task cannot be dispositive of the accused's rights, and it remains open to the defendant to demonstrate `the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.' Ibid.

"The voir dire in this case indicates no such hostility to petitioner by the jurors who served in his trial as to suggest a partiality that could not be laid aside. Some of the jurors had a vague recollection of the robbery with which petitioner was charged and each had some knowledge of petitioner's past crimes, but none betrayed any belief in the relevance of petitioner's past to the present case. Indeed, four of the six jurors volunteered their views of its irrelevance, and one suggested that people who have been in trouble before are too often singled out for suspicion of each new crime  a predisposition that could only operate in petitioner's favor." 421 U.S. at 800, 95 S.Ct. at 2036 (footnotes omitted).
Cf. Hawkins v. State, 206 So.2d 5 (Fla. 1968).
Appellant raises several other points on appeal, none of which we find meritorious so as to constitute reversible error.
We have listened carefully to oral argument, examined and considered the record *441 in light of the assignments of error and briefs filed and we have also, pursuant to Rule 6.16(b), Florida Appellate Rules, reviewed the evidence to determine whether the interests of justice require a new trial, with the result that we find no reversible error is made to appear and the evidence in the record, sub judice, does not reveal that the ends of justice require that a new trial be awarded.
Upon considering all the mitigating and aggravating circumstances and upon careful review of the entire record in the cause, the trial court properly imposed the death penalty for the murder conviction. The trial judge stated in the conclusion of his sentencing statement:
"I am not easily shocked or affected by tragedy or cruelty  but this murder of a helpless defenseless and innocent child is the most cruel, atrocious, and heinous crime I have every [sic] personally known of  and it is deserving of no sentence but death."
We agree.
Accordingly, no reversible error appearing, the judgments and sentences of the Circuit Court appealed from are hereby affirmed.
It is so ordered.
ADKINS, C.J., ROBERTS, J., and KLEIN, Circuit Judge, concur.
BOYD, J., dissents with an opinion.
OVERTON, J., concurs specially with an opinion.
ENGLAND, J., concurs in part and dissents in part with an opinion.
BOYD, Justice (dissenting).
I Dissent.
This cause is before us on direct appeal[2] from the Circuit Court of Duval County which entered a conviction of first degree murder based on a jury verdict, thereafter sentencing Appellant to death by electrocution. Although we are not here reviewing these additional matters, Appellant was simultaneously convicted of both second degree murder of his small son and child abuse in connection with the torturing of two of his other children, which led to the almost total blindness of his eldest son who was approximately thirteen years of age at the time of the murder being considered.
The only eyewitness to the murder was Appellant's son, John Dobbert, mentioned above, whose eyesight was twenty over two hundred (20/200). John testified that his father had brutally beaten his daughter Kelly Ann and, subsequently, had choked her; whereupon Appellant called John into the room to determine whether Kelly Ann had actually died. John testified that there were no signs of life and that it was his opinion that his sister was dead. Thereafter, Appellant dressed his daughter in her finest clothing, kept her lying on the bed for approximately two hours, placed her in a plastic bag and carried her to the attic. John testified that he did not see the body of his sister again and that he knew nothing of what was done with her body thereafter. There was inconsequential testimony that experts found some material in the attic which possibly could have been human blood, but this was not clearly established. The Appellant made rambling remarks concerning the possible whereabouts of his two dead children but never clearly admitted murder.
On appeal, Appellant relies in part upon the alleged error of the trial court in refusing to instruct the jury on certain lesser included offenses[3] and argues that the *442 Judge also erred when he refused to instruct the jury that they were authorized to convict the Appellant of attempted murder.[4] Rule 3.510, Rules of Criminal Procedure, provides that whenever a person is tried for a crime and the criminal statutes provide that an attempt to commit such a crime is also a crime, it is mandatory that the court instruct the jury that it is entitled to find the accused person guilty of an attempt to commit the crime in the same manner as the jury is entitled to find the defendant guilty of a lesser included offense.[5]
In this case the Appellant, through his attorney, moved the court not only to charge on the lesser included offenses but also specifically to charge on attempted murder.
This Court in Hand v. State,[6] held that defendants, upon request, were entitled to a charge on larceny when charged with robbery. In Brown v. State,[7] this Court held it was mandatory not only to instruct on necessarily included offenses if requested to do so but also to instruct on attempts to commit the crime charged if such attempts constituted crimes. In State v. Washington,[8] and in Rayner v. State,[9] this Court held it was reversible error not to instruct on lesser included offenses even though a defendant requested the court not to give them.
In Lewis v. State[10] the District Court of Appeal, Fourth District, held that failure to charge on attempt to receive stolen property when the defendant was charged with receiving stolen property was reversible error. In Herman v. State[11] that same court held it reversible error not to instruct on lesser included offenses of manslaughter and aggravated assault when requested by defendant. In Ward v. State,[12] the Fourth District ruled that failure to charge on attempts to commit the crime charged, when such attempts are crimes, constitutes error in a case where defendant was charged with breaking and entering. In Elmore v. State[13] the defendant was tried for murder and convicted of manslaughter; the Fourth District reversed the conviction for failure of the trial judge to instruct the jury on aggravated assault as requested by the defendant. In Levi v. State[14] that District held that failure to instruct *443 the jury that it could find defendant guilty of attempting to deal in credit cards belonging to another when charged with dealing with credit cards of another was reversible error. In Bracy v. State[15] the Fourth District decided that failure of the trial court to instruct on attempted murder, attempted robbery, and assault with intent to commit murder was reversible error, although the judge believed evidence clearly established murder; it was also held that a failure by the trial judge to give a requested instruction on the lesser included offense of assault with intent to commit robbery was reversible error.
The above holdings become acutely important with respect to any case in which the body of the alleged victim cannot be found. In this particular cause, the testimony of the victim's brother John was that the Appellant had severely beaten her and was choking her shortly before he decided that she was dead. Testimony in the record justified the jury in finding the Appellant guilty of murder in the first degree, and my observations herein should not be construed otherwise. Since the body of the deceased could not be found, however, the jury should have been instructed not only on lesser included offenses established by the testimony of the victim's brother John, but it should have been instructed also on attempted murder. It is remotely possible that the Appellant attempted to murder his daughter and that after removing her from the bed to the attic, considering her dead, she might have become conscious and fled. I make no such finding here, but since the statutes and rules of court require instruction on attempted murder, this appears to be a prime case in which the jury should have been instructed that, in its discretion, it could have found the Appellant guilty of attempted murder instead of murder. Human life is too precious to have an individual executed without being afforded all of the safeguards provided by the Constitutions, statutes and rules of court. While we have considered Florida's harmless error statute,[16] we feel that it is not applicable in this case, as the error was too great to be considered harmless.
The Appellant also argues that he was denied a fair trial by the court's failure to grant his motion for change of venue. Evidence in the record clearly shows that the cruelty and torture administered by the Appellant to his children became a subject of great interest among the people of the Greater Jacksonville, Florida, area at the time his crimes were made known by the news media. Further, it is apparent that the news media constantly continued to report the gruesome details of the case as they developed. An unusually high percentage of persons called as prospective jurors first informed the court that they were familiar with the case through the news media, and some of them even stated that they had opinions that the Appellant was guilty as charged but that they could remove such prejudice from their minds and could make an objective determination of his guilt or innocence.
The Constitutions of the United States and Florida permit the news media to write extensively about crime and criminals and to discuss the gory details of crime before and during trials. This is a constitutional right that I recognize and respect; however, other constitutional provisions grant persons charged with crime the right to be tried fairly, under due process of law, in an atmosphere of fairness and without prejudice in the minds of the jury. Rarely in the history of Florida has any crime created greater public attention than the activities of the Appellant in the treatment of his children, culminating in two convictions of murder and two convictions of child abuse. It is my opinion that the court should have granted the motion for *444 change of venue in order that the Appellant might be tried in some part of Florida in which the magnitude of his crimes was not so widely known and so freely discussed among the populace.
I have considered other points raised by the Appellant and deem them to be without substantive merit. I feel that the court committed reversible error in not charging the jury that it was authorized by law to find the Appellant guilty of attempted murder or the lesser included offenses of aggravated assault, aggravated battery, and assault and battery. Also, I feel that the court committed reversible error in denying Appellant's motion for change of venue. For the foregoing reasons I would quash the judgment of the trial court and remand the cause for a new trial at a location substantially away from the City of Jacksonville.
I therefore dissent.
OVERTON, Justice (concurring specially).
I concur in the majority opinion including the sentence of death. In my opinion, the facts in the record together with the explicit findings by the trial judge meet the test set forth in Tedder v. State, 322 So.2d 908 (Fla. 1975), Opinion filed November 19, 1975, concerning a sentence of death after a jury recommendation of life imprisonment.
ENGLAND, Justice (concurring in part and dissenting in part):
I fully agree with all aspects of the Court's opinion through its conclusion that the evidence "does not reveal that the ends of justice require that a new trial be awarded." I dissent from that part of the decision which upholds the trial judge's imposition of a death penalty.
In Tedder v. State, 322 So.2d 908, opinion filed November 19, 1975, we articulated a sensible standard for reviewing the conflicting sentences of juries and judges in death penalty cases. We there said:
"In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ."
Applying that standard here, I would hold that reasonable persons could disagree with the trial judge,[*] and that the jury's recommendation of life imprisonment should be adopted.
NOTES
[1] As explanation for the imposition of consecutive sentences, the trial judge stated: "The sentences imposed in the case above of Murder in the Second Degree, Child Torture and Child Abuse are to be served consecutive with the sentence which the court imposes below for the crime of Murder In The First Degree. Ordinarily it would be a useless act to run sentences for Murder in the Second Degree, Child Torture and Child Abuse consecutive to the maximum sentence for Murder In The First Degree. This is done in this case for the reason that there are now before the Courts legal challenges to the maximum penalty in first degree murder cases. Should such chalenges prevail this Court would reimpose the maximum possible sentence for Murder in the First Degree and run the sentences for Murder in the Second Degree, Child Torture and Child Abuse consecutive thereto."
[2] Article V, Section 3(b)(1), Florida Constitution.
[3] Instructions were requested by Appellant on assault and battery, § 784.03, F.S. (1973); aggravated assault, § 784.04, F.S. (1973); and aggravated battery, § 784.045, F.S. (1973), as lesser included offenses to the charges of first degree murder.
[4] Section 776.04, Florida Statutes, states in pertinent part:

"Whoever attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such an offense, but fails in the perpetration, or is intercepted or prevented in the execution of the same, shall, when no express provision is made by law for the punishment of such attempt, be punished as follows:
(1) If the offense attempted is a capital or life felony, the person convicted shall be guilty of a felony of the second degree, punishable as provided in § 775.082, § 775.083, or § 775.084."
(This seems to indicate that attempts generally contemplate attempts to commit capital crimes such as first degree murder.)
[5] Rule 3.510. Conviction of Attempt; Lesser Included Offense

"Upon an indictment or information upon which the defendant is to be tried for any offense the jurors may convict the defendant of an attempt to commit such offense if such attempt is an offense, or may convict him of any offense which is necessarily included in the offense charged. The court shall charge the jury in this regard."
[6] 199 So.2d 100 (Fla. 1967).
[7] 206 So.2d 377 (Fla. 1968).
[8] 268 So.2d 901 (Fla. 1972).
[9] 273 So.2d 759 (Fla. 1973).
[10] 269 So.2d 692 (Fla.App. 1972).
[11] 275 So.2d 264 (Fla.App. 1973), cert. den., 279 So.2d 308.
[12] 287 So.2d 138 (Fla.App. 1973); see also Clements v. State, 284 So.2d 700 (Fla.App. 1973), cert. den., 294 So.2d 654.
[13] 291 So.2d 617 (Fla.App. 1974).
[14] 297 So.2d 617 (Fla.App. 1974).
[15] 299 So.2d 126 (Fla.App. 1974).
[16] Section 924.33, Florida Statutes.
[*] As the majority observes, by imposing and discussing the basis for consecutive sentences the trial judge anticipated the possibility that reasonable people could differ with him.