403 So.2d 943 (1981)
Robert Lewis BUFORD, Appellant,
v.
STATE of Florida, Appellee.
No. 54010.
Supreme Court of Florida.
July 23, 1981.
Rehearing Denied October 14, 1981.
*944 Jack O. Johnson, Public Defender, and James R. Wulchak and Douglas A. Lockwood, Asst. Public Defenders, Bartow, for appellant.
Jim Smith, Atty. Gen., and Charles Corces, Jr. and Richard G. Pippinger, Asst. Attys. Gen., Tampa, for appellee.
ADKINS, Justice.
This is a direct appeal from a judgment adjudging defendant guilty of murder in the first degree and guilty of sexual battery upon a child under eleven years of age, and imposing two sentences of death. Defendant was also adjudged guilty of burglary with intent to commit a sexual battery and sentenced to a term of years.
In the early morning hours of Sunday, November 6, 1977, Lewis Wright, father of the victim, fell asleep on the living room sofa while he and his children were watching television. His children were on a pallet on the living room floor. Wright awakened about 2:30 or 3:00 o'clock a.m., turned off the television, and went to his bedroom. He did not notice if all of his children were still sleeping on the pallet. On his way to the bedroom he observed that the back door of the house was open, but assumed that the children's grandmother had visited the house while he was sleeping and had exited through the back door.
*945 Lewis Wright awoke again about 7:00 o'clock a.m. and noticed that the victim, his seven-year-old daughter, Toni, was missing. Wright notified police; shortly thereafter the victim's body was discovered next to a nearby church. She was lying on her back in a flower bed, with her dress pulled up around her chest and her underpants a short distance away. There were injuries to her head and dried blood on her head and face. Pieces of a shattered and blood-stained concrete block were found nearby.
At approximately 3:00 o'clock a.m. on Sunday, November 6, 1977, the defendant returned to his father's home where he was greeted by his sister, Annette Buford. She observed him breathing hard, as if he had just been running and saw him carrying his t-shirt and tennis shoes. He had white oxydized paint on his bare back and appeared to be drunk. Defendant told his sister if anyone came looking for him to say that he had been at home since 11:00 o'clock p.m. In a few moments defendant broke down and stated that he might have killed a lady with a brick. He started to implicate a person known as "Fat Boy", but immediately stopped, saying he was not going to involve anyone else.
While at his father's home later in the day, the defendant talked both of leaving home and of turning himself over to police. On Monday night defendant went to the police station, after his sister had talked with police about his role in the crime. He was arrested for murder, sexual battery, and burglary with intent to commit sexual battery. After being advised of his legal rights, defendant signed a written waiver of these rights and blurted out, "I did it." He was again advised of his rights in the interrogation room, and he again waived these rights. In his statement defendant said he broke into Wright's house through a back window. Upon entering, he saw the girl lying there, picked her up, and carried her out the back door. He took her to the church area, had her lie down and remove her clothes. He removed his clothing and then inserted his finger into her vagina. He did not move his finger; he just put it in and later took it out. He admitted penetration with his penis. When the victim started screaming, the defendant picked up a concrete block and dropped it twice on the victim's head. The defendant said he was not trying to kill her but to stop her from screaming. The victim had recognized the defendant.
After the statement was concluded, the defendant signed a consent form to search his room at his father's house for the jeans he had been wearing on the night of the incident. These jeans were recovered. A lab analysis of a blood spot on the jeans indicated that it was of the same type as the victim's blood.
With defendant's consent, the officers secured blood and hair samples from him. While the doctor was examining defendant and taking samples, the doctor pointed out various cuts and scratches on defendant's body. When the doctor was noting a set of scratches, the defendant said, "Those were not made by the little one."
A pubic hair that was discovered in the victim's vagina was consistent in characteristics with the sample taken from the defendant. Both the pubic hair found on the decedent and the sample taken from the defendant contained an unusual "starchy" substance. The child was too young to have pubic hair of her own; she was only seven years old.
At trial, the defendant testified that although he had participated in the sexual battery, a man known as "Fat Boy" had raped and killed Toni. Defendant said he refused to climb inside the Wright home because he was known by them. His testimony was that Fat Boy climbed through the window while defendant stood outside. When Fat Boy did not return for a while, defendant left. A few minutes later defendant met Fat Boy again. This time Fat Boy was carrying Toni Wright. Upon questioning her, Toni said that she knew defendant but did not know Fat Boy. Fat Boy carried Toni to the church area and commanded her to lie down. Defendant admitted having sexual intercourse with Toni while Fat Boy watched. Toni did not *946 scream while defendant was on top of her. Defendant got dressed and was planning to leave when Fat Boy commenced sexual intercourse with Toni. Toni started screaming. Defendant turned around to face them and saw Fat Boy drop a concrete block on the girl's head. Fat Boy picked up the brick to drop it again and defendant charged at him to prevent it. Fat Boy threw defendant against the wall and dropped the brick again. Fat Boy left when defendant refused to allow him to go home with him.
The police officers learned about Fat Boy and his alleged involvement in the incident from the defendant's sister before the trial took place. After an investigation, Fat Boy was eliminated as a suspect by virtue of an alibi. Defendant was charged by indictment with the offenses of first-degree murder, capital sexual battery, and burglary with intent to commit a sexual battery. The jury found defendant guilty on all three counts. The case then proceeded into the penalty phase of the bifurcated trials. The jury recommended to the court that it impose a life sentence on both the murder and sexual battery convictions. The trial court then made the following findings of fact:
In making the following findings of fact and conclusions of law the Court has taken into consideration only the testimony produced at trial and no other factors.
As to Count One of the Indictment wherein defendant was convicted of First Degree Murder the Court makes the following findings of fact:
1. As an aggravating circumstance, the capital felony, that is, the murder of Toni Annette Wright, a black female, age seven (7) years, was committed while the defendant, Robert Lewis Buford, was engaged in the commission of the crime of sexual battery. F.A. 921.141(5)(d). The evidence is conclusive that the crime of sexual battery was complete and that sufficient penetration occurred. The defendant's free and voluntary statement to law enforcement officers supports this finding together with his testimony in his own behalf during the trial. The defendant attempted to repudiate his previous confession to create an accomplice by the name of "Fat Boy", however, the Court specifically rejects this testimony as being an untrue and a total fabrication.
2. As a further aggravating circumstance the Court finds that the capital felony was especially heinous, atrocious and cruel. F.A. 921.141(5)(h). The testimony amply supports a finding that this seven (7) year old child was abducted from her home, while asleep by a nineteen (19) year old adult male, that she was taken to a secluded spot where the defendant brutally sexually assaulted her. After he had fulfilled his lustful desires and ascertained that the victim would be in a position to identify him, the defendant snuffed out the life of this child by crushing her head with a concrete block dropped at heights from at least waist high. The testimony of the pathologist, Dr. Robert Smith, reveals at least three (3) separate crushing wounds and the defendant "admits" to dropping the thirty-two (32) pound concrete block on the victim's head twice. The Court specifically rejects as untrue and as a fabrication, the defendant's testimony that the victim was killed by this so called accomplice "Fat Boy". Dr. Robert Simth viewed the victim's body at the scene and testified that the child was covered with sand and that there was evidence of an extensive struggle. The Court finds that the struggle was between the defendant and the seven (7) year old child and that no other person was involved. The pathologist testified that he found numerous abrasions over the entire body of this child, with extensive amounts of blood coming from the nose and mouth areas. Three (3) severe wounds were found in the head area, two (2) on the right side and one (1) almost in the midline in the back of the head, indicating at least three (3) separate blows. The skull was extensively fractured resulting in numerous fragments of the skull becoming depressed directly into the brain. Multiple recent abrasions were found on the child's right arm and on her right chest area.

*947 The pathologist was of the opinion that any of the three (3) separate blows would have been sufficient to cause death and that the child may have lived for at least an hour after the first blow but that she would have lost consciousness fairly rapidly.
The pathologist also testified that he visually observed extensive trauma to the genital area and that his autopsy revealed acute perforation of the hymen resulting in acute hemorrhaging from the hymenal area. The autopsy revealed numerous bleeding points in the lining of the vagina itself and the presence of five (5) cc's of seminal fluid within the vagina.
Although the defendant in his statement and in his testimony denied that the victim made any outcry while she was being sexually abused the Court rejects this testimony as being unbelievable and patently untrue and finds as a matter of common understanding and knowledge that a seven (7) year old virginal child would suffer excruciating pain as her vagina was being penetrated first by the defendant's finger and then by his adult penis.
The standard jury instructions define heinous as meaning extremely wicked or shockingly evil. Atrocious is defined as outrageously wicked and vile. Cruel means designed to inflict a high degree of pain; utter indifference to, or enjoyment of, the suffering of others; pitiless. In the Court's experience of seven (7) years as an Assistant Prosecuting Attorney and six (6) months on the bench, I am not aware of a case where a defendant's conduct more clearly falls within the definition of heinous, atrocious, and cruel.
3. The other aggravating circumstances: F.S. 921.141(5)(a); 921.141(5)(b); 921.141(5)(c); 921.141(5)(e); 921.141(5)(f); 921.141(5)(g), are inapplicable in this case.
As to mitigating circumstances involving both the charge of first degree murder and the charge of sexual battery, the Court makes the following findings:
1. The defendant has no significant history of prior criminal activity. F.S. 921.141(6)(a), and this a mitigating factor.
2. As to F.S. 921.141(6)(b), there is no evidence that the capital crimes were committed while the defendant was under the influence of extreme mental or emotional disturbance. The defendant's mother testified that for several weeks prior to the crime the defendant had been using alcohol and marijuana extensively but the Court finds that this alcohol and marijuana usage do (sic) not result in extreme mental or emotional disturbance.
3. As to F.S. 921.141(6)(c), there is absolutely no evidence that the victim was a participant in the defendant's conduct or that she consented to the act.
4. As to F.S. 921.141(6)(d), the defendant attempted to establish by his testimony that he was merely an accomplice to these offenses and that his participation was relatively minor, however, he did "admit" to having sexual intercourse with this seven (7) year old child, and as the Court has stated above, his testimony that this so called "Fat Boy" was an accomplice is rejected as being untrue.
5. As to F.S. 921.141(6)(e), there is no evidence that the defendant was under extreme duress or under the substantial domination of any person.
6. As to F.S. 921.141(6)(f), there is no believable evidence that the defendant lacked the capacity to appreciate the criminality of his conduct or that his ability to conform his conduct to the requirements of law was substantially impaired. On the contrary, the fact that the defendant sought to eliminate Toni Annette Wright because she would be in a position to identify him supports a finding that the defendant appreciated the criminality of his conduct.
7. As to F.S. 921.141(6)(g), the defendant was nineteen (19) years at the time of these offenses and his age is therefore, a mitigating circumstance. The Court notes, in passing, that as to sexual battery the legislature found that the age of the defendant was a factor to be taken into account in determining whether the sexual battery is a capital crime.

*948 As to Count Two of the indictment wherein the defendant was convicted of sexual battery wherein the victim was eleven (11) years of age or younger and the defendant was over eighteen (18) years of age, the Court makes the following findings of fact:
1. As an aggravated circumstance, the capital felony was especially heinous, atrocious and cruel. F.A. 921.141(5)(h). In support of this finding the Court readopts the findings contained in paragraph 2 above.
2. The other aggravating circumstances to-wit: F.S. 921.141(5)(a)(b)(c)(d)(e)(f)(g), are inapplicable to this charge.
The trial jury has rendered its advisory sentence to the Court recommending that a sentence of life imprisonment be imposed on the defendant as to each of these capital crimes. Our Florida Supreme Court has stated that the recommendation of the trial jury is to be accorded great weight by the trial judge but I perceive the law still to be that the recommendation of the trial jury is not binding on the trial judge and that I still have the awesome responsibility of making the ultimate determination of whether the aggravating circumstances do in fact outweigh any mitigating circumstances and accordingly whether the death penalty should be imposed. In the following cases the trial judge declined to follow the recommendation of the trial jury and the imposition of the death penalty was subsequently affirmed by the Florida Supreme Court: Hoy vs. State, 353 So.2d 826 (1977); Barclay vs. State, 343 So.2d 1266 (1977); Dobbert vs. State, 328 So.2d 433 (1976); Douglas vs. State, 328 So.2d 18 (1976); a case originating from this Circuit; Gardner vs. State, 313 So.2d 675 (1975); and, Sawyer vs. State, 313 So.2d 680 (1975). A review of the factual statements in these cases leads the Court to the conclusion that this defendant's conduct was at least equal to the conduct of the defendants in each of those capital cases.
It is the ultimate finding and determination of the Court that as to the charge of first degree murder, the aggravating circumstances substantially outweigh the mitigating circumstances and therefore the death penalty should be imposed upon the defendant, the recommendation of the trial jury to the contrary notwithstanding.
As to the charge of sexual battery, the aggravating circumstances outweigh the mitigating circumstances and therefore the death penalty should be imposed upon the defendant, the recommendation of the trial jury to the contrary notwithstanding.
Upon appeal the defendant says that he could not be convicted and sentenced for both the first-degree felony murder and the underlying felonies, sexual battery and burglary, relying upon the principles enunciated in Pinder v. State, 375 So.2d 836 (Fla. 1979). Pinder was a prosecution for first-degree murder, sexual battery and burglary. The Court commented that the jury could have found defendant guilty of first-degree murder only on the basis of evidence that the defendant killed the victim during the perpetration of the burglary or sexual battery, as there was no evidence of premeditation. Therefore, the Court held, defendant could not be convicted of felony murder and the underlying felony upon which the murder conviction was based. If, in addition to the killing, the defendant commits more than one felony, only one of the felonies need be considered the underlying felony and the defendant may be convicted and sentenced for the other felonies. The Court relied upon Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), and Harris v. Oklahoma, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977).
In the case sub judice there was ample evidence from which the jury could have found premeditation. Although the defendant, at one point, declared that he did not intend to kill the victim; nevertheless, he also said that he dropped the concrete block on the victim "because she knowed me." He also stated that after the sexual *949 battery he took a cement block, held it "a little higher than the waist  right here" and dropped it on the child. He did it again. This time he lifted it higher. He bent down to see if she was still alive and she was not.
If the evidence shows that the accused had ample time to form a purpose to kill the deceased and for the mind of the killer to become fully conscious of his own design, it will be deemed sufficient in point of time in which to enable the killer to form a premeditated design to kill. Green v. State, 93 Fla. 1076, 113 So. 121, 122 (1927). Where a person strikes another with a deadly weapon and inflicts a mortal wound, the very act of striking such person with such weapon in such manner is sufficient to warrant a jury in finding that the person striking the blow intended the result which followed. See Rhodes v. State, 104 Fla. 520, 140 So. 309, 310 (1932).
There being adequate proof of premeditation, the principles announced in Pinder are not applicable to this case.
Defendant also said that the offenses are not sufficiently distinguishable to permit the imposition of cumulative punishment. Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of the facts which the other does not. Brown v. Ohio. Murder in the first degree through premeditation requires proof of a fact not required in sexual battery: premeditated design to kill.
It is true, as asserted by defendant, that the double jeopardy clause protects against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In the absence of proof of premeditated design, this principle would be applicable to the case sub judice. The two offenses are sufficiently distinguishable so as to permit two convictions and two punishments.
Defendant also complained that the court improperly limited cross-examination of two state witnesses regarding their knowledge of defendant's non-violent nature. Witnesses Barnes and Hayes were friends of the defendant. Barnes testified as to activities of the defendant until 11:00 o'clock p.m. the night of the homicide. Hayes testified as to his activities until 2:00 o'clock a.m. the same night. On cross-examination the attorney for defendant asked Barnes if he found defendant "to be a quiet, non-violent person." On cross-examination counsel for defendant asked Hayes if he had known defendant "to get violent or anything like that." There were no facts elicited by the state upon direct examination relative to defendant's propensity for violence. It is true that cross-examination extends to the entire subject matter, and to all matters that may modify, supplement, contradict, rebut or make clearer the facts testified to in chief. Coxwell v. State, 361 So.2d 148 (1978). However, the attempted cross-examination in the case sub judice was in no way relative to the direct examination of the witnesses. It was improper cross-examination.
In addition the question itself was improper. Defendant had a right to produce evidence of his non-violent character, but this is done through his own witnesses. In any event, he could only have elicited evidence of his general reputation in the community, not specific instances of non-violence. Prevatt v. State, 82 Fla. 284, 89 So. 807 (1921); Reddick v. State, 25 Fla. 112, 5 So. 704 (1889).
Defendant next contends that section 921.141, Florida Statutes (1977), is unconstitutional because it restricts the mitigating circumstances to be considered to those enumerated in the statute. He says this violates the Eighth and Fourteenth Amendments to the United States Constitution. This question was raised when defendant moved to dismiss or quash the indictment. Also he requested a jury instruction stating that mitigating circumstances which the jury could consider were not limited to those listed in the statute. The trial court denied the motion to dismiss or quash and also denied the requested instruction. The *950 record does not show that the trial judge precluded defendant from offering any evidence of mitigation. The trial judge correctly ruled that the standard jury instructions adequately covered the instructions on mitigating circumstances.
Defendant argues that the death penalty statute is unconstitutional in light of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), where the Supreme Court held that the limited range of mitigating circumstances which could be considered by the sentencer under the Ohio statute was incompatible with the Eighth and Fourteenth Amendments. The identical attack was made upon the Florida statute in Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979). There the Fifth Circuit held that the Florida statute as applied and construed by the Supreme Court of Florida conforms to the decision rendered in Lockett v. Ohio. In several cases this Court has recognized the relevance of non-enumerated mitigating circumstances and utilized them in determining the propriety of the sentence. See Buckrem v. State, 355 So.2d 111 (Fla. 1978); McCaskill v. State, 344 So.2d 1276 (Fla. 1977); Messer v. State, 330 So.2d 137 (Fla. 1976); Meeks v. State, 336 So.2d 1142 (Fla. 1976); Jones v. State, 332 So.2d 615 (Fla. 1976); Chambers v. State, 339 So.2d 204 (Fla. 1976); Halliwell v. State, 323 So.2d 557 (Fla. 1975). It is clearly established that all relevant evidence pertaining to the character of the defendant and circumstances of the crime may be considered by the sentencer in Florida. Lockett does not invalidate our statute.
Defendant says the imposition of the death sentence upon him for the murder conviction, where he did not possess a purpose to cause the death of the victim, is unconstitutional. This assertion is without foundation in the record. There was sufficient proof of premeditation.
Section 794.011(2), Florida Statutes (1977), provides that whoever being eighteen years or older commits a sexual battery upon a person eleven years of age or younger, is guilty of a capital felony. The defendant was nineteen years of age at the time of the offense and his victim was seven years of age. In his motion to dismiss, defendant challenged the constitutionality of this statute, contending that punishment by death for the crime of sexual battery constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution. By denying the motion to dismiss and imposing the death penalty, the trial court held that the statute was constitutional. This question has not been decided under present Florida law. We have recently considered sexual battery cases in which the penalty had been imposed, but we reduced the sentence to life imprisonment in both cases because of the particular circumstances. Purdy v. State, 343 So.2d 4 (Fla.), cert. denied, 434 U.S. 847, 98 S.Ct. 153, 54 L.Ed.2d 114 (1977); Huckaby v. State, 343 So.2d 29 (Fla.), cert. denied, 434 U.S. 920, 98 S.Ct. 393, 54 L.Ed.2d 276 (1977).
Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), involved the sentencing of a man convicted of rape upon the verdict of a Georgia jury. The Georgia jury recommended the death penalty and the trial court imposed a death sentence. The Georgia Supreme Court affirmed. The Supreme Court of the United States held that the punishment of death for the rape of an adult woman violates the cruel and unusual punishment clause of the Eighth Amendment because it is grossly disproportionate and excessive in relation to the crime committed. The Court has yet to decide whether the same holds true for the rape of a child under eleven years of age. In its plurality opinion (Justices White, Stewart, Blackmun, and Stevens) the Court noted that Georgia was the only state which authorized a sentence of death when the rape victim was an adult woman. Only two other jurisdictions (Florida and Mississippi) provided capital punishment when the victim was a child. It was then said in the opinion:

*951 Rape is without doubt deserving of serious punishment; but in terms of moral depravity and of the injury to the person and to the public, it does not compare with murder, which does involve the unjustified taking of human life. Although it may be accompanied by another crime, rape by definition does not include the death of or even the serious injury to another person. The murderer kills; the rapist, if no more than that, does not. Life is over for the victim of the murderer; for the rape victim, life may not be nearly so happy as it was, but it is not over and normally is not beyond repair. We have the abiding conviction that the death penalty, which "is unique in its severity and irrevocability," Gregg v. Georgia, 428 U.S. 153 at 187, 96 S.Ct. 2909, [at 2931,] 49 L.Ed.2d 859, is an excessive penalty for the rapist who, as such, does not take human life.
This does not end the matter; for under Georgia law, death may not be imposed for any capital offense, including rape, unless the jury or judge finds one of the statutory aggravating circumstances and then elects to impose that sentence. Ga.Ann.Code § 26-3102 (1976 Supp.); Gregg v. Georgia, supra, at 165-166, 96 S.Ct. 2909 [at 2921-2922], 49 L.Ed.2d 859. For the rapist to be executed in Georgia, it must therefore be found not only that he committed rape but also that one or more of the following aggravating circumstances were present: (1) that the rape was committed by a person with a prior record of conviction for a capital felony; (2) that the rape was committed while the offender was engaged in the commission of another capital felony, or aggravated battery; or (3) the rape "was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or aggravated battery to the victim. Here, the first two of these aggravating circumstances were alleged and found by the jury.
Neither of these circumstances, nor both of them together, change our conclusion that the death sentence imposed on Coker is a disproportionate punishment for rape. Coker had prior convictions for capital felonies  rape, murder, and kidnaping  but these prior convictions do not change the fact that the instant crime being punished is a rape not involving the taking of life.
433 U.S. at 598-599, 97 S.Ct. at 2869 (footnotes omitted).
Justices Brennan and Marshall concurred in the judgment as each believed that the death penalty in all circumstances is cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments. Justice Powell concurred in the judgment, but would not prejudge the issue of capital punishment in the case of an outrageous rape resulting in serious, lasting harm to the victim. Justice Burger and Rehnquist dissented. The reasoning of the justices in Coker v. Georgia compels us to hold that a sentence of death is grossly disproportionate and excessive punishment for the crime of sexual assault and is therefore forbidden by the Eighth Amendment as cruel and unusual punishment.
We point out that section 782.04, Florida Statutes (1977), defines murder in the first degree as the unlawful killing of a human being when perpetrated from a premeditated design to effect the death of the person killed, or when committed by a person engaged in the perpetration of, or in the attempt to perpetrate, any sexual battery. Since the death sentence sub judice is sustained under the conviction of premeditated murder, the constitutionality of the statute imposing the death penalty for sexual battery becomes academic. Capital punishment can be inflicted only once.
The defendant says that the death sentence should be vacated in the murder conviction because there was no evidence to support the finding of the trial judge that the crime was heinous, atrocious, and cruel. Defendant refers us to State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), where we held that atrocious means outrageously wicked and vile and that cruel means designed to inflict a high degree of *952 pain with utter indifference to, or even enjoyment of, the suffering of others. Defendant insists that when the facts of this case are compared with previous decisions of this Court the findings of the trial judge cannot be upheld. He cites Halliwell v. State, 323 So.2d 557 (Fla. 1975). In Halliwell the killing arose from a love triangle in which defendant flew into a violent rage after the husband of the woman he loved had beaten her. It was an emotional type of homicide. However, hours later the defendant dismembered the body. We held that the dismemberment of the body after death was not relevant in fixing the death penalty. Since the dismemberment was not relevant, a killing committed in an emotional rage was not heinous, atrocious, or cruel. In the case sub judice there was no emotional rage. The defendant kidnapped a seven-year-old child for the purpose of sexually abusing her and when he felt she could identify him, defendant proceeded to kill her with a cement block.
In Burch v. State, 343 So.2d 831 (Fla. 1977), cited by defendant, there was evidence that the defendant was mentally disturbed at the time of the offense. We held this to be a mitigating factor and that this factor was obviously considered by the jury in recommending life and improperly rejected by the trial judge. When this mitigating circumstance was weighed against the aggravating circumstances, the judge's rejection of the jury's recommendation was overturned by this Court. In Burch we did not say that the act was not especially heinous, atrocious, or cruel.
In Chambers v. State, 339 So.2d 204 (Fla. 1976), the defendant and the victim shared a long-standing relationship which included severe and disabling beatings. Also, the victim had consented to the beatings which caused death. We held that the totality of circumstances and the weighing of mitigating and aggravating circumstances did not warrant the imposition of the death penalty on the defendant.
Jones v. State, 332 So.2d 615 (Fla. 1976), cited by defendant, resulted in the approval of the jury's recommendation of a life sentence because the defendant's mental illness was considered as a factor to be weighed.
The imposition of the death penalty was held to be proper in Washington v. State, 362 So.2d 658 (Fla. 1978), cert. denied, 441 U.S. 937, 99 S.Ct. 2063, 60 L.Ed.2d 666 (1979), where the victim was kidnapped and held captive for twenty-four hours before being stabbed to death while tied, spread-eagled and helpless, on a bed, crying out and moaning as the stabbing continued.
Alford v. State, 307 So.2d 433 (Fla. 1975), cert. denied, 428 U.S. 912, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976), involved a defendant twenty-seven years of age who was convicted of the murder of a thirteen-year-old female. The victim's body was discovered lying atop a trash pile. She had been raped and shot to death, execution style. Her nude body was found blindfolded, with bullet wounds in her head, chest, back and arm. We upheld the death sentence and described the act as being especially heinous, atrocious, and cruel.
The homicides in Proffitt v. State, 315 So.2d 461 (Fla. 1975), aff'd, Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (stabbing a man asleep in his bed), and Spinkellink v. State, 313 So.2d 666, (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976) (shooting a sleeping companion), were heinous, atrocious, and cruel. So the instant case certainly qualified as one which is heinous, atrocious and cruel. The mental anguish suffered by the victim preceding the killing is a factor that may be considered in determining whether the act was especially heinous, atrocious, or cruel. Knight v. State, 338 So.2d 201 (Fla. 1976).
Defendant also cites, in support of his position, the case of Purdy v. State, 343 So.2d 4 (Fla.), cert. denied, 434 U.S. 847, 98 S.Ct. 153, 54 L.Ed.2d 114 (1977). Purdy involved a sexual battery on a child and the imposition of the death sentence was based primarily on the aggravating circumstance of heinous, atrocious, and cruel. We held that the evidence failed to show that the sexual battery of this child was especially aggravated under the terms of the death *953 sentence law. We pointed out there was no evidence of physical abuse other than the sexual assault and the victim was not physically harmed. The case sub judice was more than a sexual assault. There was a kidnapping and physical harm which resulted in death. In Washington v. State we observed that the mental anguish experienced by a kidnapped victim awaiting eventual death bears upon the atrocity of the crime. This contention is without merit.
Defendant then contends that the trial court erred in not finding the additional mitigating factors which were present in the evidence. He complains that the trial court rejected the mitigating circumstances of extreme mental or emotional disturbance or impaired mental capacity, discounting the effects of defendant's consumption of alcohol, drugs, and marijuana. Obviously the ability of the defendant to give a detailed account of the crime was inconsistent with the contention that he had a diminished or impaired mental capacity because of excessive consumption of alcohol, drugs, and marijuana. In view of the testimony presented, the trial judge correctly rejected defendant's "drinking" and "drug use" as a mitigating factor. Jones v. State, 332 So.2d 615 (Fla. 1976), does not avail defendant because in Jones there was extensive psychiatric evidence to the effect that the defendant did not know the difference between right and wrong.
Defendant raises the possibility that he was a mere accomplice and that this theory was not considered by the trial judge. During the course of the investigation and during the trial, the defendant did attempt to implicate Fat Boy. This theory was rejected by the trial judge in weighing the evidence produced at the trial.
Defendant contends that the trial court committed error in rejecting the jury's recommendations of life imprisonment, relying upon Tedder v. State, 322 So.2d 908 (Fla. 1975). In Tedder we pointed out that the recommendation of the jury should be given great weight. In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.
In Malloy v. State, 382 So.2d 1190 (Fla. 1979), the Court said:
We have repeatedly stated that in reviewing the propriety of a death sentence, this Court must weigh heavily the advisory opinion of life imprisonment by the sentencing jury. The facts justifying the death sentence must be clear and convincing in order to overrule the jury's recommendation. Therefore, we must examine this record to determine whether there are clear and convincing facts that warranted the imposition of the death penalty, and, in doing so, we must determine if there was a reasonable basis for the jury's recommendation.
Id. at 1193. (Citations omitted.)
If defendant's testimony were accepted as creating a reasonable doubt, he should not be found guilty of murder in the first degree for his participation in the murder would not be proved. Defendant said he was leaving the scene, turned around when the victim screamed, and saw Fat Boy drop a concrete block on her head.
A convicted defendant cannot be "a little bit guilty." It is unreasonable for a jury to say in one breath that a defendant's guilt has been proved beyond a reasonable doubt and, in the next breath, to say someone else may have done it, so we recommend mercy.
This case is unlike Neary v. State, 384 So.2d 881 (Fla. 1980), where an accomplice receiving lesser punishment played a significant role in the perpetration of the criminal act. Here the defendant committed the murder or Fat Boy did it. This question was settled by the verdict of guilty.
The trial court reviewed other cases where this Court has affirmed the death penalty after a recommendation by the jury of life imprisonment. The trial judge made a specific finding that defendant's actions in the case sub judice at least equaled the conduct in those cases. This finding is supported by the evidence. Consequently, it comes to this Court with the presumption of correctness.
*954 In Hoy v. State, 353 So.2d 826 (Fla. 1977), cert. denied 439 U.S. 920, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978); Barclay v. State, 343 So.2d 1266 (Fla. 1977), cert. denied, 439 U.S. 892, 99 S.Ct. 249, 58 L.Ed.2d 237 (1978); Dobbert v. State, 328 So.2d 433 (Fla. 1976), aff'd, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); Douglas v. State, 328 So.2d 18 (Fla.), cert. denied, 429 U.S. 871, 97 S.Ct. 185, 50 L.Ed.2d 151 (1976); and Sawyer v. State, 313 So.2d 680 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976), this Court found compelling reasons to reject the jury's recommendations.
Unquestionably the Court in each of these cases was swayed by the extreme heinousness and atrociousness of the crimes. So was the trial court in the instant case. In all of the above cases, with the exception of Dobbert, the victim was an adult. Here it was a seven-year-old child. She had been kidnapped, subjected not only to sexual abuse, but to the anguish of perceiving that she was about to have her head crushed, and this mental anguish bears on the atrocity of the crime. Washington v. State. The trial judge exercised a reasoned judgment, and the facts suggesting a sentence of death were so clear and convincing that virtually no reasonable person could differ.
The trial judge was not required to request a presentence investigation before sentencing the defendant. Hargrave v. State, 366 So.2d 1 (Fla.), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979); Thompson v. State, 328 So.2d 1 (Fla. 1976).
The sentence of death imposed for conviction of sexual assault is vacated. Section 775.082(1), Florida Statutes, mandates a punishment of life imprisonment with a requirement that defendant serve no less than twenty-five years before becoming eligible for parole. This is an automatic sentence, and the Court has no discretion. Sufficient factors are present in this case to create an exception to Florida Rule of Criminal Procedure 3.180 requiring the presence of defendant at sentencing. See Anderson v. State, 267 So.2d 8 (Fla. 1972). The defendant, for the crime of sexual battery upon a child under eleven years of age, shall be imprisoned for life, with no eligibility for parole during the first twenty-five years.
We have carefully reviewed the evidence in this case and find that the judgments of guilt and the sentence of death for murder, as well as the sentence to a term of years, were appropriate. These judgments and sentences of the trial judge are therefore affirmed.
SUNDBERG, C.J., and BOYD, OVERTON and ALDERMAN, JJ., concur.
ENGLAND, J., concurs as to the conviction and dissents as to the sentence.